E. C. FITZWATER *et al.* v. THE NATIONAL BANK OF
SENECA *et al.*

**No. 11,651.** (61·Pac. 684.)

CORPORATIONS — *Right of Intervention by Stockholders.* The
stockholders of a corporation who allege that their company has
a valid defense to a suit brought against it, but which its manag-
ing officers wrongfully or fraudulently refuse to make, are entitled
to intervene in the suit and defend for the company, upon their
tender of an answer stating valid matters of defense to the action,
and the making of a showing, by evidence, of reasonable grounds
to believe that such defense can be finally proved upon a trial of
the case, and that the officers whose duty is to make it are wrong-
fully or fraudulently refusing to do so.

Error from Nemaha district court; WM. I. STUART,
judge. Opinion filed July 7, 1900. Reversed.

*S. K. Woodworth,* for plaintiffs in error.

*Wells & Wells,* and *R. M. Emery,* for defendant in
error.

The opinion of the court was delivered by

DOSTER C. J.: In this case proceedings in error
have been instituted to reverse an order of the court
below overruling the motion of certain stockholders
in a banking corporation to intervene in a suit brought
against their company and to defend the action
against it. The grounds of the motion to intervene
were that the company was not liable to the action
brought against it and that its directors and manag-
ing officers wrongfully and fraudulently refused to de-
fend. The facts were that the State Bank of Seneca,
a banking institution organized under the laws of this
state, undertook to reorganize as a national bank in
accordance with the provisions of the national-bank
act. That act provides that banking institutions or-

ganized under state laws may reorganize as national banks upon a vote of two-thirds of the stockholders, upon the taking of which vote the board of directors are required to certify the action taken to the comptroller of the currency, who thereupon issues a certificate of authority to do business as a national bank. The decisions of the courts are that upon effecting the reorganization in the prescribed way the old corporation becomes merged in the new, or, more accurately speaking, the new corporation is held and treated to be a mere continuation of the old one. The change effected, therefore, merely consists in passing from one form of organization to another and in amenability to national regulation and control instead of that of the state.

The requisite number of the stockholders of the State Bank of Seneca voted to make the change. Whether the board of directors certified the resolution of reorganization to the comptroller of the currency does not appear from the record before us. However, it does appear that in due time the comptroller issued a certificate of authority to a bank entitled "The National Bank of Seneca," which institution commenced, and since then has continued to do, business by such title.    In the main its stockholders were the stockholders of the old State Bank of Seneca, its directors were the same, with one or two additional persons, and its executive officers were the same.    It commenced and has continued to do business at the place where the State Bank of Seneca was located. The officers of the old state bank, who, as just remarked, were also officers of the new national bank, continued to do business for the old bank and in its name.    This business, however, consisted in liquidating and winding up its affairs.    It pursued the work

of collecting its securities and paying its obligations, and, among other things, made reports to the bank commissioner of the state.

It was unable to discharge all of its indebtedness, and to enable it to do so it borrowed $20,000 or more from the new national bank. It did not pay the money so borrowed, and suit was thereupon brought against it. It made default in the suit, whereupon certain of its stockholders who had not gone into the new or supposedly reorganized bank filed a motion to be allowed to defend in place of the corporation, alleging the lack of power of the old corporation officers to incur the obligations for which the suit was brought, that such obligations were given without consideration and in fraud of the old corporation and its stockholders, and that the officers of the old corporation, being the same as those of the new one and being the ones guilty of the wrongful acts charged, had neglected to defend as they should have done. In connection with the motion of intervention, the stockholders tendered a verified answer setting up all the matters herein briefly mentioned, and asked that they be allowed to file it and, under it, to be allowed to defend for their company.

The case was heard on the motion for leave to intervene and to file the answer. Considerable evidence was taken, much of which tended quite strongly to support the contention of the stockholders, especially to support their claim that the old state bank had, by process of reorganization, become changed into the new one. This claim was denied, it being asserted that, notwithstanding the resolution of the stockholders to reorganize, a reorganization was not in fact accomplished, but, instead thereof, the new bank was an original institution organized without reference to the exist-

ence of the old bank. If such was the case, the old bank did not become merged into the new one, or changed to a new one, but retained its existence under the laws of this state and was competent to contract the obligations sued on. Seemingly, the only missing link in the chain of evidence necesssary to show that the new bank was a reorganized, and not an original, institution was a showing that the board of directors of the old bank had forwarded the resolution of reorganization to the comptroller, and that the comptroller's certificate of authority had been issued in pursuance to such resolution, and not in pursuance of a scheme of original incorporation. The inference, however, is strong, from all the evidence in the case, that the national bank was a reorganized, and not a newly organized, institution. However, if the record before us were the record of a final trial of the case, we would be compelled, under the well-settled rule, to allow the judgment of the court below to remain undisturbed; but the trial that was had was not a final trial, but only a trial of the motion for leave to intervene and have a trial. In other words, the trial that was had was not the trial proper, but was a trial of the preliminary question as to whether a trial should be had.

There can be no question but that stockholders are entitled to defend legal proceedings in behalf of their corporation in case its directors or managing agents are wilfully or fraudulently neglectful of its interests. (*Mining Co. v. McKibben*, 60 Kan. 387, 56 Pac. 756.) In that case it was said:

"If the directors be derelict in their duties, and through wilful neglect or for a fraudulent purpose fail to protect the corporate interests, the stockholders may do so in their stead, but to entitle them to do so it

must be made to appear that the corporate officers who are primarily charged with the duty are wilfully or fraudulently neglectful of it.''

A proper practice in such cases is for the stockholders to move the court for leave to intervene in the suit they wish to defend, and to allege and show that the authorized and managing agents of the company are derelict in their duties. Before allowing this privilege to the stockholders, the court should require of them a *prima facie* showing, at least, but that showing need not be more than *prima facie* enough to enable the court to conclude that there are reasonable grounds to believe that the corporation defendant has a meritorious defense to the action against it and that its officers are fraudulently or improvidently neglectful of its interests. This showing was made in the case we are considering. Irrespective of the matters of fraud charged in the motion and answer, and to support which there was some showing of testimony, it would seem that if the National Bank of Seneca was the State Bank of Seneca reorganized, such last-named bank had no authority to contract the obligations sued on; rather, it had no existence, and, having no existence, the contracting of a debt cannot be predicated of it. (Smith, Dig. Nat. Bank Dec. 215.) However, we do not wish to be understood as making such decision at this time. We only remark, as we did before, that such seems to be the rule of the cases on the subject. If such be the law, there can be no question, unless some exceptional facts exist, that the old corporation had no power to contract the obligations sued on, and the stockholders, therefore, would be justified in asking leave to defend. Hence, we are of the opinion, upon the showing made, that the court should have sustained the motion of intervention, should have al-

lowed the filing of the anwer, and the making of an issue thereon, and should have allowed a full trial of the case.

To enable such to be done, the judgment of the court below is reversed.