REPUBLIC MINING & MANUFACTURING COMPANY *v.* ELROD.

4-7526                                    185 S. W. 2d 99

Opinion delivered February 5, 1945.

*W. R. Donham, Rose, Loughborough, Dobyns & House* and *Marshall M. Little,* for appellant.

*Kenneth C. Coffelt* and *Eugene Coffelt,* for appellee.

HOLT, J. Appellee, Florida Virginia Elrod, an unmarried, elderly lady, owned an undivided 1/21 interest in a tract of land in Saline county, containing 56.33 acres. There were a large number of other heirs who owned interests in this property. On October 6, 1941, appellant, The Republic Mining & Manufacturing Company, through its attorney and representative, Marshall M. Little, purchased Miss Elrod's interest in the property for a cash consideration of $333.33. On February 7, 1944, this action was brought by appellee against appellants in which she alleged in substance that she had been induced to sell her interest in the property by false and fraudulent representations of appellants for a consideration far below the real value of the property to her damage in the amount of $47,619. Appellants answered with a general denial. Upon a jury trial, there was a verdict for appellee in the amount of $10,000, and from the judgment on the verdict comes this appeal.

Appellants argue as their principal grounds for reversal, (1) that the evidence was not sufficient to support the verdict, (2) that even should there be substantial evidence of misrepresentation and fraud, there can be no recovery for the reason that appellee was paid the full value, or worth, of her property and was not damaged, and (3) that there was error in the manner, or

procedure, adopted by the trial court in selecting the jury.

After a careful review of all the testimony, we have reached the conclusion that appellants' second contention must be sustained, for although we should hold that there was substantial evidence of false representations and fraud practiced by appellants in procuring the deed from appellee on October 6, 1941, still before appellee could recover it devolved upon her to show by substantial evidence that she had relied and acted upon such false representations of appellants to her damage, and this, we think, she has failed to do.

The rule appears to be well settled that "a vendor is not damaged by fraud in procuring the sale if the property is worth no more than he received." 12 R. C. L., p. 393, § 142. Our own case of *McDonough* v. *Williams*, 77 Ark. 261, 92 S. W. 783, 8 L. R. A., N. S., 452, 7 Ann. Cas. 276, is cited in support of the text.

The rule also appears to be equally well settled in cases, such as we have here where the seller or vendor does not seek to rescind the contract of sale or to recover the property conveyed, the measure of damages would be the difference between the value of the property at the time the sale was made and the price paid. This rule is announced in 27 C. J., p. 92, § 242, in this language. "It has been held that in case of actionable fraud in inducing plaintiff to sell his property, where there is no claim for rescission or recovery of the specific property, the measure of damages is the difference between the value of the property and the price paid," and in support of the text, *McDonough* v. *Williams. supra*, is again cited.

In the *McDonough* v. *Williams* case, an action at law for damages for alleged fraud and misrepresentation in the sale of certain corporate stock, this court said on the question as to the measure of damages: "The measure of which would be the difference between the price paid to the plaintiff for his stock and the actual value

thereof at the time, if the latter exceeded the former.''
See, also, 24 American Jurisprudence, p. 66, § 235.

We now proceed to examine the evidence on the question as to the value of the land at the time appellee sold her interest on October 6, 1941. In this connection, the court without objection instructed the jury that ''you will not consider any evidence tending to show the value of the land after October 6, 1941, not known on or prior to that date.''

We think all the material testimony presented shows that this 56.33 acre-tract was not worth more, or known to be worth more, than $7,000 at the time appellee sold her interest to appellants for $333.33, based on this valuation. This valuation was on the basis of $125 an acre. The testimony showed that the American Cyanamid Company had drilled twelve or more test holes for bauxite on this property prior to the sale here in question, and the Arkansas Bauxite Corporation had drilled five or six holes, and these were the only drill tests made on the property until appellant, Republic Mining & Manufacturing Company, drilled the land in November, 1941, after purchasing appellee's interest.

With the knowledge of the results of the tests made by the American Cyanamid Company, Mr. Venner, who had been in the bauxite business from April, 1934, to 1940, and had organized and operated the Arkansas Bauxite Company and had done some drilling on the Elrod tract here in question, testified that the entire tract was not worth more than $5,000. Mr. Harrington, who was also connected with the Arkansas Bauxite Company, and familiar with the value of the Elrod land, testified that, in his opinion, it had no value as bauxite land on October 6, 1941. Mr. Branting, on behalf of appellant, Republic Mining & Manufacturing Company, prior to the purchase of appellee's interest, held options on the lands immediately north and east of the Elrod tract, at a price of $125 an acre, to purchase in the event bauxite were found in paying quantities, after making drill tests and declined to purchase these tracts. He authorized appel-

154

lant, Little, to buy the interest of the heirs in the Elrod tract on a basis of a $7,000 valuation. Prior to the purchase from appellee, four other Elrod heirs sold their interest to the Republic Mining & Manufacturing Company (represented by Mr. Little), on a basis of a $7,000 valuation, for the entire tract, and each testified that a fair price was paid for the interest. Each of these interests of the Elrod heirs was bought by Mr. Little for the Republic Company about the time the purchase was made from appellee, the first purchase being made in September, 1941. We find no further material testimony bearing upon the value of the Elrod land here in question at the time appellee sold her interest on October 6, 1941.

There is testimony, upon which appellee lays much stress, that appellant, Little, acquired a 1/84 interest of one of the Elrod heirs for $169, which he sold to appellant, Republic Company, in May, 1942, for $3,000, and that the Republic Company in January, 1942, bid for a lease on the entire Elrod tract of 56.33 acres a minimum royalty of $145,000, and in addition 65c per ton royalty for all ore mined in excess of the minimum royalty, and that all of this was evidence, says appellee, that her interest was of far greater value on October 6, 1941, than the consideration paid to her. We cannot agree for the reason that these transactions were all subsequent to October 6, 1941, except the interest, *supra,* acquired by Little.

The record further reflects that the Republic Company for the first time did some drilling on the property between November 17, 1941, and December 24, 1941, subsequent to the purchase from appellee, and that the government's need for lower grade bauxite became much greater after December, 1941, when war was waged by Japan on this country, and changed conditions had materially increased values of bauxite lands in January, 1942. The evidence further shows that at the time Little acquired his interest for $169, it was in litigation and the Republic Company had refused to allow him to

acquire it for the company, and that his sale to the company of this interest, as indicated, did not take place until in May, 1942. We conclude, therefore, that there is no substantial testimony that appellee did not receive full value for her property, or was damaged.

While it does not affect this decision, we call attention to appellant's third assignment of error in which the manner, or procedure, in selecting the jury is challenged. The method followed by the lower court was clearly reversible error. At the beginning of the trial, appellants demanded, as was their right, a drawn and struck jury. Over their objection, after five jurors had been disqualified for cause, the court ordered the names of the remaining qualified jurors, only twenty-one in number, placed in the box from which eighteen were drawn. Our statutes (§§ 8345-46-47, Pope's Digest) provide: "§ 8345. How NAMES DRAWN. If either party shall desire a panel, the court shall cause the names of twenty-four competent jurors, written upon separate slips of paper, to be placed in a box to be kept for that purpose, from which the names of eighteen shall be drawn, and entered on a list in the order in which they were drawn, and numbered. § 8346. RIGHT TO STRIKE NAMES. Each party shall be furnished with a copy of said list, from which each may strike the names of three jurors, and return the list so struck to the judge, who shall strike from the original list the names so stricken from the copies, and the first twelve names remaining on said original list shall constitute the jury. § 8347. CHALLENGES FOR CAUSE FIRST DECIDED. Before the drawing of the list above mentioned, the court shall decide all challenges for cause which are presented, and if there are not twenty-four competent jurors, bystanders shall be summoned as hereinbefore provided, until the requisite number of competent jurors is obtained from which said list shall be drawn. Where there are several persons on the same side, the challenge of one shall be the challenge of all under this chapter."

These provisions of the statutes are mandatory, the language used is plain and unambiguous and requires that all challenges for cause shall first be disposed of

156

and then the names of twenty-four competent jurors written upon separate pieces of paper and placed in the box, from which eighteen names shall be drawn, and from the list of these eighteen names furnished the parties, they shall strike their peremptory challenges. The trial court erred in refusing to place the names of twenty-four competent jurors in the box in accordance with the plain statutory mandate. In *Young* v. *Morrison,* 159 Ark. 270, 251 S. W. 869, this court said: ''The decisions of the Federal courts in these cases are to the effect that the above provisions of the Digest are mandatory.'' This same interpretation was placed upon our statutes by *F. Ry. Co.* v. *Shane,* 157 U. S. 348, 15 S. Ct. 641, 39 L. Ed. 727.

For the error alleged in appellant's second assignment, the judgment is reversed, and since the cause seems to be fully developed, it is dismissed.

ROBINS, J., dissents.