**Ilo VANDERBOOM et al., Plaintiffs,**

**v.**

**Sam SEXTON, Jr., James S. Hall, Charles H. Smith, Austin Gatlin, Erma S. Gatlin, Diamond G Ranch, Inc., an Arkansas corporation, Texas Capital Corporation, a Texas Small Business Investment Company and the City National Bank of Fort Smith, Arkansas, a national banking association, Defendants.**

**No. FS–68–C–47.**

United States District Court
W. D. Arkansas,
Fort Smith Division.

Jan. 24, 1969.

---

Bethell, Stocks, Callaway & King, Ft. Smith, Ark., for plaintiffs.

Sam Sexton, Jr. pro se.

Harper, Young, Durden & Smith, Ft. Smith, Ark., for Gatlins and Diamond G Ranch, and Texas Capital Corp., for defendants.

Wright, Lindsey & Jennings, Little Rock, Ark., for James S. Hall.

## OPINION

JOHN E. MILLER, Senior District Judge.

The questions before the court arise on the motions of the defendants for summary judgment.

On December 16, 1968, the defendant Sam Sexton, Jr., filed his motion for summary judgment in accordance with the provisions of Rule 56(b), (c), Fed. R.Civ.P., on the ground that "the complaint, answer of this defendant, and affidavit of this defendant attached hereto and marked Exhibit A, show that the defendant is entitled to judgment as a matter of law."

On December 20, 1968, the defendants Austin Gatlin, Erma S. Gatlin and Diamond G Ranch, Inc., filed their motion for summary judgment containing substantially the same allegations as made by the defendant Sexton.

On December 20, 1968, the defendant TeleCom Corporation (Texas Capital Corporation) filed its motion under Rule 56 on the ground "that the complaint, answer and all other pleadings of the defendants herein and the affidavit and exhibits of the defendants herein which are incorporated by reference show that the defendant is entitled to judgment as a matter of law."

On December 23, 1968, the defendant James S. Hall filed his motion for summary judgment to dismiss the action "on the ground that there is no genuine issue as to any material fact and that this defendant is entitled to a judgment as a matter of law.

"This motion is based upon:

1. The pleadings in the within case;

2. The affidavit of James S. Hall, to which copies of the following documents are attached as Exhibits A and B, respectively:

a. The contract of sale executed on September 9, 1965, among defendants Sexton, Hall and Smith as sellers and plaintiff

Investors Thrift Corporation as buyer;

b. The assignment of stock powers by Sexton, Hall and Smith to plaintiff Investors Thrift Corporation that was accomplished on November 2, 1965, pursuant to the contract of sale of September 9, 1965."

Rule 56(b), Fed.R.Civ.P., provides:

"A party against whom a claim, counterclaim, or crossclaim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."

Subparagraph (c), as amended January 21, 1963, effective July 1, 1963, provides:

"The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Before discussing the issues and contentions of the parties, the court is of the opinion that the present status of the case and a brief résumé of the pleadings should be set forth.

On July 18, 1968, plaintiffs commenced this action by filing their complaint containing 32 numbered paragraphs and 13 pages. The complaint contains only one count, but an analysis of the various paragraphs discloses that there are two causes of action stated. In paragraphs 14, 15, 16, 21, 22, 24, 25, 26, 27, 28 and 30 the plaintiffs state a common-law action for fraud and deceit.

In paragraphs 17, 18, 19, 20, 21, 23, 24, 29 and 30 the plaintiffs attempt to state a federal cause of action.

In paragraph 29 the plaintiffs alleged:

"By their acts, the defendants, jointly and severally, combined in an unlawful conspiracy and employed a manipulative and deceptive device with respect to the sale of stock of American Home Builders, Inc., to the plaintiffs, which operated as a fraud and deceit upon the plaintiffs.

"By their acts, therefore, Sexton, Hall, Smith and Austin Gatlin combined in an unlawful conspiracy, and were aided and abetted by The City National Bank, Texas Capital Corporation [TeleCom Corp.], Diamond G Ranch, Inc., and Erma S. Gatlin in employing a manipulative device and a scheme and artifice to defraud the plaintiffs, and did thereby damage the plaintiffs in violation of their rights and in violation of 15 U.S.C. 77*l* [§ 12 of the Securities Act of 1933], 15 U.S.C 77q [§ 17 of the Securities Act of 1933], 15 U.S.C. 78j [§ 10 of the Securities Act of 1934], and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, and 6 Ark.Stat.Ann. 67–1256 (Repl.Vol. 1966)."

All the defendants except Charles H. Smith, who is in Vietnam and has not been served with process, and the City National Bank of Fort Smith filed answers, denying the allegations of the complaint, and in the amendments to their answers pleaded that "the alleged causes of action as reflected by plaintiffs' complaint are barred by limitations as they were not commenced within the period of time as allowed by the statutes of the State of Arkansas and the United States Code."

On August 1, 1968, the City National Bank filed its separate motion to dismiss the complaint and/or motion for summary judgment. On August 8, 1968, the court, upon consideration of the motion, dismissed the complaint of Investors Thrift Corporation for failure to state

a claim against the movant, City National Bank, and granted the motion for summary judgment against all the other plaintiffs except abated the action of the plaintiff R. S. Miskimins until the disposition of a similar suit pending in the Sebastian Circuit Court, No. 5695.

On the date the order was entered, the plaintiffs, late in the afternoon, filed their response to the motion of the City National Bank, whereupon the court on August 12, 1968, reviewed its consideration of the motion, as well as the pleadings in Civil Actions Nos. 2103–2107, and re-examined its order of August 8, 1968, and reaffirmed the same.

On August 15, 1968, plaintiffs filed their notice of appeal from the order.

Later, on October 17, 1968, the court entered an order dismissing the complaint of plaintiff R. S. Miskimins.

On December 5, 1968, the court, sua sponte, considered whether it had jurisdiction of the common-law cause of action alleged in plaintiffs' complaint and heretofore referred to, and as a result of the investigation the court entered an order dismissing for lack of jurisdiction portions of the complaint which alleged a cause of action against the defendants under the common law.

■ The complaint discloses that all the plaintiffs except Investors Thrift Corporation are citizens and residents of the State of South Dakota, but that Investors Thrift Corporation was organized under the laws of the State of Arkansas and maintains its principal place of business in the Western District of Arkansas. All of the defendants are citizens of Arkansas except Texas Capital Corporation which was organized under the laws of the State of Texas with its principal office at Georgetown, Texas. Thus, there is no diversity of citizenship between all of the plaintiffs and all of the defendants. Title 28, U.S.C.A. § 1332(a) (1).

■ To sustain jurisdiction on grounds of diversity of citizenship, there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Rock Island Millwork Co. v. Hedges-Gough Lumber Co., (8 Cir. 1964) 337 F.2d 24. The court cannot, therefore, consider the plaintiffs' allegations of common-law fraud. However, if the jurisdictional requirements of 28 U.S.C.A. § 1332(a) (1) were satisfied, there would be no reason why plaintiffs could not join their common-law claim with their claims under federal statutes. The rule of "pendent jurisdiction" stated broadly is that once jurisdiction is properly assumed under federal law, the jurisdiction extends to the determination of all questions in the cause, including questions of state law, irrespective of the disposition made of the federal questions. The Supreme Court in Hurn v. Oursler, (1933) 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, at page 589 of 53 S.Ct., stated:

"But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action.*"

At page 590 of 53 S.Ct. the court said:

"The bill as amended, although badly drawn, sets forth facts alleged to be in violation of two distinct rights, namely, the right to the protection of the copyrighted play, and the right to the protection of the uncopyrighted play. From these averments two separate

and distinct causes of action resulted, one arising under a law of the United States, and the other arising under general law. For reasons that have already been made manifest, the latter is entirely outside the federal jurisdiction and subject to dismissal at any stage of the case. It is hardly necessary to say that a federal court is without the judicial power to entertain a cause of action not within its jurisdiction, merely because that cause of action has mistakenly been joined in the complaint with another which is within its jurisdiction."

See, also, Wright, Federal Courts, § 19. The court is of the opinion that two separate causes of action are alleged, only one of which is federal in character. The other is based upon the common law.

In Moran v. Paine, Webber, Jackson and Curtis, (W.D.Pa.1966) 279 F.Supp. 573, the court at page 577 said:

"We recognize that actions under both the Securities Act of 1933 and the Securities Exchange Act of 1934 are based on different elements from common law actions for fraud and deceit in state courts, and that the same set of operative facts may give rise to separate causes of action."

In affirming the judgment of the District Court, the Third Circuit at page 245 of 389 F.2d 242 said:

"Accordingly, after a careful scrutiny of the record, we affirm the findings of the lower court that the defense of res judicata was there well pleaded as to appellant's cause of action arising out of its common law rights cognizable under diversity jurisdiction and as to those rights claimed under the Securities Act of 1933 cognizable under the court's concurrent jurisdiction."

■ In § 78, p. 297, Wright on Federal Courts, the learned author states:

"Where the basis of jurisdiction is a federal claim, however, plaintiff may not join with it a separate and distinct non-federal claim unless diversity exists."

■ In Guthrie v. United States, (E. D.Wis.1965) 238 F.Supp. 855, the court, in discussing the question under consideration, said at page 856:

"Joinder of the distinct, non-federal claim based on contract with the federal claim against the government, if permitted, cf. Lloyds' London v. Blair, 262 F.2d 211, 213 (10th Cir. 1958) must rest on independent jurisdictional grounds. Delman v. Federal Products Corporation, 251 F.2d 123, 125 (1st Cir. 1958). The doctrine of pendent jurisdiction has no application where there are separate causes of action rather than distinct grounds for relief in support of a single cause of action. Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). And see Wright, Federal Courts, § 19, pp. 55–57, and § 78, p. 297."

In Delman v. Federal Products Corporation, (1 Cir. 1958) 251 F.2d 123, the court at page 126 said:

"The plaintiff's cause of action for breach by the defendant of its contract to employ the plaintiff, if indeed such a cause of action is alleged, is certainly not one arising under the Constitution, laws or treaties of the United States but is one arising under state law. Federal jurisdiction over it must, therefore, rest upon the diversity jurisdiction conferred by § 1332 (a) (1) of Title 28 of the United States Code. But jurisdiction under this section fails, for not only is there no allegation that the required jurisdictional amount is in controversy, but also it is apparent that the plaintiff and for jurisdictional purposes the defendant also are both citizens of Rhode Island. Nor is there pendent jurisdiction over the cause of action for breach of the contract of employment under the doctrine of Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed 1148, for that cause of action is not at all the same as the plaintiff's cause of action for failure to grant reemployment as the acts of Congress require, and under Hurn v. Oursler (289 U.S.

at page 246, 53 S.Ct. at page 589) pendent federal jurisdiction exists only when 'two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question,' and does not exist when 'two separate and distinct causes of action are alleged, one only of which is federal in character.' "

See, also, Sunbeam Lighting Co. v. Pacific Asso. Lighting, Inc., (9 Cir. 1964) 328 F.2d 300; Murphy v. Kodz, (9 Cir. 1965) 351 F.2d 163; Wham-O-Mfg. Co. v. Paradise Mfg. Co., (9 Cir. 1964) 327 F.2d 748.

In 1A, Moore's Federal Practice, 2d Ed., at page 712, there appears an extensive note by the author on the subject "Co-extensiveness of Pendent Jurisdiction and § 1441(c)," in which the author discusses Hurn v. Oursler, supra.

In Murphy v. Kodz, supra, the court discussed a great many cases on the question of pendent jurisdiction, and 351 F.2d at page 166 stated:

"From these cases it is clear that, absent some statutory limitation, federal jurisdiction may be exercised over non-federal facets of a case if there is first established jurisdiction based on a substantial federal ingredient."

In the instant case there is a statutory limitation of jurisdiction, and therefore the court lacks jurisdiction to consider the non-federal claim.

■ In addition, the claim of the individual plaintiffs is derivative and the corporation is a necessary party to the suit. In discussing this question, the Supreme Court in Price v. Gurney, (1945) 324 U.S. 100, 65 S.Ct. 513, 89 L. Ed. 776, at page 516 of 65 S.Ct., said:

"There is a misconception running through the presentation of this case which should be noted at the outset. It is a misnomer to speak of the filing of the petition on behalf of the corporation as a derivative action. A derivative action is a suit by a shareholder to enforce a corporate cause of action. The corporation is a necessary party to the suit. And the relief which is granted is a judgment against a third person in favor of the corporation. That is the rule in Ohio as well as elsewhere. 10 Ohio Juris. § 244 et seq.; Dodge v. Woolsey, supra, (18 How. 331, 15 L.Ed. 401); City of Davenport v. Dows, supra, (18 Wall. 626, 21 L.Ed. 938); Hill v. Murphy, 212 Mass. 1, 98 N.E. 781, 40 L.R.A., N.S., 1102, Ann.Cas.1913C, 374; Groel v. United Electric Co., 70 N.J.Eq. 616, 61 A. 1061; Continental Securities Co. v. Belmont, 206 N.Y. 7, 99 N.E. 138, 51 L.R.A.,N.S., 112, Ann.Cas.1914A, 777. Similarly, if a corporation has a defense to an action against it and is not asserting it, a stockholder may intervene and defend on behalf of the corporation. 10 Ohio Juris. § 257; Eggers v. National Radio Co., 208 Cal. 308, 281 P. 58; Fitzwater v. National Bank of Seneca, 62 Kan. 163, 61 P. 684, 84 Am.St.Rep. 377. Moreover, equity has evolved numerous remedies to protect not only the rights of the corporation but the interests of the stockholders as such against various acts of mismanagement. See 10 Ohio Juris. § 260 et seq.; Berle, Studies in the Law of Corporation Finance (1928). But respondents have not pursued either course. The petition which they have filed with the bankruptcy court is not a suit to enforce or protect a corporate right. Nor is it a suit to protect the interests of the respondents as stockholders. Yet if it were either one, the federal District Court could not entertain it. No diversity of citizenship is shown and no other basis of federal jurisdiction is apparent. The question therefore is whether the bankruptcy court as an incident of its bankruptcy powers can give respondents relief which, if their charges are taken as true, they might obtain in another forum. We do not think it can."

The first sentence of brief of plaintiffs submitted December 26, 1968, is as follows:

"Plaintiffs concede that their action must rest under Rule 10b-5 promul-

gated by the Securities and Exchange Commission under the Securities Exchange Act of 1934, and common law fraud (previously dismissed)."

The defendant Sexton pleaded in numbered paragraph 33 of his original answer the statute of limitations as a complete defense to the claims of the plaintiffs. Each of the other defendants was granted leave by the court to file an amendment to his or its answer to plead the statute. Such amendments were filed prior to the pleading of the statute of limitations by the motions to dismiss and/or for summary judgment.

■ The legal effect of the bar clearly appears from the complaint, and the defense that the claim is barred by the applicable statute of limitations may be raised by motion for summary judgment, motion to dismiss, or by motion for judgment on the pleadings. Albrecht v. Indiana Harbor Belt R. Co., (7 Cir. 1949) 178 F.2d 577, cert. den. 339 U.S. 949, 70 S.Ct. 804, 94 L.Ed. 1363; Anderson v. Linton, (7 Cir. 1949) 178 F.2d 304; Brictson v. Woodrough, (8 Cir. 1947) 164 F.2d 107, cert. den. 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772; Cool v. International Shoe Co., (8 Cir. 1944) 142 F.2d 318; Roe v. Sears, Roebuck & Co., (7 Cir. 1943) 132 F.2d 829; Jones v. Bankers Life Co., (4 Cir. 1942) 131 F.2d 989; Craig v. Western & Southern Indemnity Co., (6 Cir. 1941) 119 F.2d 591; Adams v. Greer, (W.D.Ark.1953) 114 F.Supp. 770.

■ In the consideration and disposition of the motions of defendants the court must determine if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The complaint was filed July 18, 1968, and, inter alia, it is alleged that for the purpose of purchasing the stock of the corporations, Markham, as the agent of plaintiffs, and defendants Sexton, Hall and Smith entered into an option agreement on September 9, 1965, providing for the purchase by Investors Thrift of the capital stock of American Home Builders (AHB), Peoples Loan & Investment Company (PL&I), and subsidiary corporations. In the option Sexton, Hall and Smith granted Investors Thrift an option to purchase all of the stock upon the terms and conditions set forth in the option. The investors were granted until January 10, 1966, to exercise the option. Paragraph IV provides:

"The parties specifically agree that until January 10, 1966, or until the exercise of said option, whichever is sooner, Smith shall continue in his capacity as President of AHB, and Sexton shall continue in his capacity as Chairman of the Board and General Manager of PLI; provided that Austin Gatlin shall be and act as consultant for PLI, commencing September 15, 1965, at a monthly salary of One Thousand Five Hundred and No/100 Dollars ($1,500.00), and Sexton shall perform no act in said capacity without Gatlin's approval; and M. W. Markham shall perform the duties of General Manager of AHB, effective on the execution hereof."

Paragraph X provides:

"Sexton, Hall and Smith agree that the books and accounts of the corporations herein named (except Texas Capital) are presently available for examination and that Investors, its agents, servants, and employees, shall have full access to all of the records of said corporations for purpose of verifying all the assets as above warranted and represented."

On November 2, 1965, the defendants Sexton, Hall and Smith, as assignors, and Investors Thrift, as assignee, executed an "Assignment of Stock Powers." The document witnesses that the assignee had entered into an agreement with assignors to acquire all of the stock which assignors may own or hold in PL&I and/or AHB or any of their subsidiary corporations; that assignors' stock is held in pledge by Texas Capital Corporation; that assignee had agreed

to pay to said corporation the sum of $400,000.00 concurrently with the execution of this agreement, and the further and additional sum of $150,000.00 on January 1, 1966, and a further additional sum of $115,583.27 on June 30, 1966, plus accumulated interest, and:

"WHEREAS, the parties mutually desire to provide for the control, custody and voting privileges attendant to the aforementioned stock and have agreed upon the procedure for accomplishing such purpose.

"NOW, THEREFORE, it is by the parties agreed as follows:

"Assignors hereby sell, assign, set over and convey to Assignee, their right, title and interest in and to any and all stock standing in the name of Assignors, or either of them, on the corporate books of Peoples Loan & Investment Company or American Home Builders, Inc., together with the right to vote such stock for all corporate purposes.

"This Assignment is expressly conditioned upon Assignee's making of timely payments of the sums set forth above to Texas Capital Corporation, and in the event Assignee should fail or refuse to make the payments at the time and in the manner set forth above, then this assignment shall be and become void and of no further force and effect."

The plaintiffs had full access to all of the records of the corporations from the date of the option, September 9, 1965, for the purpose of verifying all statements made relative to the assets by Sexton, Hall and Smith. All the payments agreed upon in the option and in the Assignment of Stock Powers were paid on or before January 10, 1966, and complete control of all the corporate entities mentioned in the option and Assignment of Stock Powers was delivered to Investors on or before January 10, 1966."

The above facts are not controverted. In the supplemental brief of plaintiffs submitted January 10, 1969, the plaintiffs attached the affidavits of Ilo Vanderboom, Andy DeHaan, James Nachtigal, H. T. Ringling and Robert Carter, but such affidavits do not deal with the question before the court, but only deal with the issues that would probably be material in a trial on the merits.

The material and revelant facts uncontrovertibly establish that the suit was commenced by the filing of the complaint on July 18, 1968, and the question that the court must determine from these facts is whether the claim or claims as alleged by plaintiffs were barred by the applicable statute of limitations at the time of the filing of the suit.

Plaintiffs' federal cause of action is based on § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j (b) [1], § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77(q) [2], and Rule

---

1. 15 U.S.C.A. § 78j(b) is as follows:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 * * * * *
 "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public

2. 15 U.S.C.A. § 77q provides:
 "(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 "(1) to employ any device, scheme, or artifice to defraud, or
 "(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light

interest or for the protection of investors."

10b–5 of the Rules and Regulations of the Securities and Exchange Commission (17 C.F.R. 240.10b–5 [3]). A violation of § 10(b) and Rule 10b–5 will also result in a violation of § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q, where the alleged fraud occurs in the sale of the security. The provisions of the two sections are substantially the same, except that § 17(a) is limited to sales. In each case, the violation consists of a sale of a security *and* the use of any means or instrumentality of interstate commerce or the mails, *in connection* with the use of any device, scheme or artifice to defraud. Each element must bear a significant relationship to the others.

 Both 15 U.S.C.A. § 77q and 15 U.S.C.A. § 78j(b) are silent as to limitation of actions, and it is, therefore, clear that the appropriate Arkansas limitations statute applies. Cope v. Anderson, (1947) 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602; Holmberg v. Armbrecht, (1946) 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743; Myzel v. Fields, (8 Cir. 1967) 386 F.2d 718, cert. den. 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); Charney v. Thomas, (6 Cir. 1967) 372 F.2d 97; Janigan v. Taylor, (1 Cir. 1965) 344 F.2d 781, cert. den. 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); Hooper v. Mountain States Securities Corp., (5 Cir. 1960) 282 F.2d 195, cert. den. 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693; Errion v. Connell, (9 Cir. 1956) 236 F.2d 447; Fratt v. Robinson, (9 Cir. 1953) 203 F.2d 627, 37 A.L.R.2d 636; Fischman v. Raytheon Mfg. Co., (2 Cir. 1951) 188 F.2d 783; Maher v. J. R. Williston & Beane, Inc., (S.D.N.Y.1967) 280 F.Supp. 133; Trussell v. United Underwriters, Ltd., (D.C.Colo.1964) 228 F.Supp. 757; Connelly v. Balkwill, (N.D.Ohio 1959)174 F.Supp. 49; Tobacco and Allied Stocks v. Transamerica Corp., (D.C.Del.1956) 143 F.Supp. 323; Northern Trust Co. v. Essaness Theatres Corp., (N.D.Ill.1952) 103 F.Supp. 954; Osborne v. Mallory, (S.D.N.Y.1949) 86 F.Supp. 869.

Section 22 of the Arkansas Securities Act of 1959 (Ark.Stat.Ann. § 67–1256(e) (Repl.1966)), which is § 410(e) of the Uniform Securities Act, provides in part:

"No person may sue under this section more than two [2] years after the contract of sale."

See Central Investments v. Polk, (1965) 239 Ark. 165, 388 S.W.2d 381.

The general statute of limitations apparently applicable to actions based on common-law fraud and deceit is Ark. Stat.Ann. § 37–206 (Repl.1962),[4] which

---

of the circumstances under which they were made, not misleading, or

"(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

3. 17 C.F.R. § 240.10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud.

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security."

4. "*37–206. Actions which must be brought in three years—Contracts not in writing—Rent—Trespass—Libel—Injury to goods.*
"The following actions shall be commenced within three (3) years after the passage of this act, or, when the cause of action shall not have accrued at the taking effect of this act, within three (3) years after the cause of action shall accrue: First, all actions (of debt) founded upon any contract, obligation, or liability, (not under seal [and not in writing],) excepting such as are brought upon the judgment or decree of some court of record of the Unit-

provides that certain actions must be brought within three years after the accrual of the cause of action. As hereinbefore stated, the court, sua sponte, on December 5, 1968, dismissed the claim of plaintiffs based on the common law for lack of jurisdiction, but both statutes of limitations will be considered and discussed since plaintiffs contend that the general statute should be applied. The question thus arises as to which statute of limitations the court must apply. The court must choose the one which best effectuates the federal policy at issue. Charney v. Thomas, supra. The plaintiffs on their brief cite Charney and cases cited therein for the proposition that, as between the general statute of limitations and the one contained in the Arkansas Securities Act, the former should apply. First, it must be kept in mind that the court is not here faced with a choice between a catch-all statute of limitations on actions to recover on a liability created by statute and a statute of limitations which by its provisions is specifically applicable to fraud. Errion v. Connell, (9 Cir. 1956) 236 F.2d 447; Fratt v. Robinson, (9 Cir. 1953) 203 F.2d 627, 37 A.L.R.2d 636; Fischman v. Raytheon Mfg. Co., (2 Cir. 1951) 188 F.2d 783; Connelly v. Balkwill, (N.D.Ohio 1959) 174 F.Supp. 49. In the instant case, Arkansas has no statute of limitations which specifically includes fraud. Ark.Stat.Ann. § 37–206 (Repl.1962) is in fact a catch-all statute which was made to include fraud by judicial decision. Air Leases v. Baker, (W.D.Ark.1958) 167 F.Supp. 145, citing cases. Nor does the court agree that the choice confronting it is one between a general statute of limitations applicable to fraud and a statute of limitations in a state "blue

sky" law containing no provisions similar to § 10(b) of the Securities Exchange Act of 1934. The court in Charney, at page 100 of 372 F.2d, stated:

"Although in some cases the Local Blue Sky Law might be the more appropriate point of reference, in the present case the Michigan law contains no provision similar to section 10(b) of the federal law. Thus, the normal six-year period of M.S.A. § 27A.5813 should apply despite the fact that actions under section 10(b) are not exactly the same as common law fraud actions."

The Michigan law to which the court referred was the Michigan "Blue Sky Law" M.S.A. § 19.756, Comp.Laws 1948, § 451.116, which borrows almost verbatim § 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(2).

In Trussell, supra, the question of the applicability of the statute of limitations contained in the state "blue sky" law was reached somewhat circuitously. There the choice was between a three-year statute of limitations specifically applicable to fraud, a three-year residuary statute applicable to other actions for which no period of limitations was provided, and a two-year statute of limitations applicable to actions on a liability created by federal statute where the statute involved contained no period of limitations. The plaintiffs contended that the two-year statute amounted to an unconstitutional discrimination against federal causes of action. The defendants argued that there would be no unconstitutional discrimination as the Colorado Securities Act (which is identical to the Arkansas Securities Act) also contained a two-year limitations statute.

---

ed States, of this, or some other State; (second, all actions upon judgments rendered in any court not being a court of record;) third, all actions for arrearages of rent (not reserved by some instrument in writing, under seal;) fourth, all actions (of account, assumpsit, or on the case,) founded on any contract or liability, expressed or implied; fifth, all actions for trespass on

lands, or for libels; sixth, all actions for taking or injuring any goods or chattels."

See, Air Leases, Inc. v. Baker, (W.D. Ark.1958) 167 F.Supp. 145; Burton v. Tribble, (1934) 189 Ark. 58, 70 S.W.2d 503; Field v. Gazette Publishing Company, (1933) 187 Ark. 253, 59 S.W.2d 19; Dilley v. Simmons National Bank, (1913) 108 Ark. 342, 158 S.W. 144.

The court, at page 776 of 228 F.Supp., stated:

"We regard that statute of limitations as one which is necessarily restricted in its applicability to violations of that Act, however. Civil actions arising under the Colorado Securities Act (to the extent relevant here in comparison with a § 10(b) action) are strictly analogous to a § 12(2) action—but not to * * * a § 10(b) action * *."

Section 12(2) of the Securities Act of 1933 is substantially identical to § 410 (a) (2) of the Uniform Securities Act, which has been adopted in Michigan,[5] Colorado, and Arkansas, Ark.Stat.Ann. §§ 67–1235—67–1262 (Repl.1966), as well as in many other states. Section 410 is the only section of the Uniform Act which provides a private remedy. Rule 10b–5 is codified as § 101 of the Uniform Act, Ark.Stat.Ann. § 67–1235 (Repl.1966),[6] but it was the intent of the drafters that no private remedy would be available under *state* law other than

as set forth in § 410, Ark.Stat.Ann. § 67–1256 (Repl.1966).[7]

The courts in Charney and in Trussell held, without discussion, that an action under a provision of state securities law similar to § 12(2) is not analogous to an action under Rule 10b–5, at least for the purpose of applying the statute of limitations contained in the state securities act. The decision in Trussell is distinguishable from the instant case, as the District Court for the District of Colorado is bound by a decision that the plaintiff must allege and prove scienter on the part of the seller as an element of the violation. Rice v. United States, (10 Cir. 1945) 149 F.2d 601. Where proof of scienter is required, the requisites of proof in an action based on Rule 10b–5 are substantially similar to an action based on common-law fraud, providing some basis for application of the statute of limitations applicable to the latter. In Myzel v. Fields, supra, the Court of Appeals for the

---

5. At the time *Charney* was commenced, Michigan had not adopted the Uniform Securities Act. Michigan adopted the Act in 1964, and it became effective on January 1, 1965. The plaintiffs filed suit in February 1964, but as indicated above prior Michigan law regarding civil liability was identical to § 12(2).

6. "67–1235. *Unlawful acts in connection with offer, sale or purchase of securities.*— "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly
 "(1) to employ any device, scheme, or artifice to defraud,
 "(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or
 "(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

7. The Commissioners' Note to § 101 of the Uniform Act, Ark.Stat.Ann. § 67–1235 (Repl.1966), states in part:
 "The sanctions for the conduct which is made 'unlawful' by § 101 (or any other section which makes conduct 'un-

lawful') are found in Parts II, III and IV of the statute. Those sanctions include administrative proceedings of various sorts under §§ 204 and 306 when a registration of a broker-dealer, agent, investment adviser or security is pending or effective under Part II or III; judicial injunction under § 408; and criminal prosecution under § 409. Section 410(h) provides that 'unlawful' conduct does not result in civil liability except as provided in § 410."
Section 410(h) of the Uniform Act, Ark. Stat.Ann. § 67–1256(h) states:
"The rights and remedies provided by this act are in addition to any other rights or remedies that may exist at law or in equity, but this act does not create any cause of action not specified *in this section* or section 202(e)."
The Commissioners' Note to § 410(h) of the Uniform Act states in part:
"Notwithstanding the presence of several specific liability provisions in each of the several SEC statutes, the federal courts have implied a civil cause of action by a defrauded seller against the buyer under SEC Rule X-10B-5. * * * The 'but' clause in § 410(h) is designed to assure that no comparable development is based on violation of § 101 of this Act."

Eighth Circuit held that proof of scienter is *not* required in an action based on Rule 10b–5. In addition, and this is the point on which the court differs with Charney, clause (2) of Rule 10b–5 is clearly embodied in § 12(2) of the Securities Act of 1933 and in § 410(a) (2) of the Uniform Securities Act. Ark. Stat.Ann. § 67–1256(a) (2) (Repl.1966), the corresponding provision in Arkansas, states in part:

"(a) Any person who

\* \* \* \* \* \*

"(2) offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him \* \* \*."

Moreover, it is clear that from its inception § 10(b) has been acknowledged as a catch-all provision. Securities and Exchange Comm. v. Texas Gulf Sulphur Co., (2 Cir. 1968) 401 F.2d 833. In Bromberg, Securities Law; Fraud—SEC Rule 10b–5, § 2.4 (1968), the learned author, in discussing overlaps among the SEC fraud provisions, states:

"Far more serious is the role of implication in administering the several provisions. Because of their similarities, something left out of one but included in another suggests strongly that it was omitted deliberately from the first and not intended to be read in. This is the doctrine of *expressio unius est exclusio alterius,* which has a respectable history and logic, reinforced by reference to the inclusion in a parallel provision. *The history of 10b-5 is a massive rejection of this approach.*"

Thus, the clear implication of Rule 10b–5 is that it was intentionally drawn broadly in terms of persons and transactions and that, due to its breadth, it is not inconsistent with the other SEC provisions relating to fraud. In fact, each of the major SEC fraud provisions contains the equivalent of clause (2) of Rule 10b–5.

In Thiele v. Shields, (S.D.N.Y.1955) 131 F.Supp. 416, an action based on misrepresentation in the sale of municipal bonds, the defendants urged that relief under Rule 10b–5 and § 17(a) of the 1933 Act be denied as inconsistent with the municipal bond exception contained in § 12(2). In disposing of the defendants' contention, the court at page 419 stated:

"However, the moving defendants urge, in substance, that to the extent that the Section 12(2) municipal bond exemption from civil liability arising from misrepresentations in a prospectus or oral communication is inconsistent with Sections 17(a) and 10 (b), civil remedies under the latter sections should be denied. Although this proposition may be maintainable in the abstract, there is no inconsistency between Section 12(2), on the one hand, and Sections 17(a) and 10(b), on the other hand, when those sections are read *in pari materia* and are applied to the particular allegations here presented."

The reasoning of the New York District Court is clearly applicable to the instant case, as the plaintiffs' allegations, if proven, would amount to a violation of both § 12(2) and Rule 10b–5. The primary difference between § 12(2) and Rule 10b–5 regarding fraud in the sale of securities is that § 12(2) gives a defense that the defendant did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. There are no express defenses to an action under Rule 10b–5, and a short period of limitations is, therefore, appropriate.

It is no doubt true, as plaintiffs suggest, that a cause of action under Rule 10b–5 existed prior to and at the time of adoption of the Uniform Securities Act in Arkansas. Since 1959, however, federal courts sitting in Arkansas have had a choice in Rule 10b–5 cases between applying the general statute of limitations and that contained in the Arkansas Securities Act, although the issue has not been raised in a reported case. The choice of the court in this action in no way affects actions brought under *state* law, based either on common-law fraud and deceit or on Ark.Stat.Ann. § 67–1256 (Repl.1966). The fact that, under Arkansas law, a defrauded purchaser has a choice of civil remedies under the Arkansas Securities Act or at common-law, whereas the defrauded seller has only the latter, is a matter for the legislature to correct if it should so desire. However, such a change appears unlikely in view of the Commissioners' Notes to the Uniform Act, footnote 7, supra.

It should also be kept in mind that the defrauded purchaser proceeding under Arkansas law is not completely free to pick and choose as he will. His choice on one hand is an action at common law, with its greater burden of proof and longer period of limitations. On the other, he may proceed under Ark.Stat.Ann. § 67–1256 (Repl.1966), which although the burden of proof is less, is tempered by a shorter statute of limitations. An action under Rule 10b–5, however, is available to both defrauded purchasers and sellers, and the same period of limitations will apply to any action brought by either. This would obviously be the case no matter which period of limitations the court chose.

■ It is also true that, in an action based on Rule 10b–5, the plaintiffs are required to make an election between rescission and a suit for damages, at least where the pursuit of inconsistent forms of relief becomes prejudicial to the defendants, Myzel v. Fields, supra, 386 F.2d pp. 740–741. On the other hand, if the decisions interpreting § 12 of the Securities Act of 1933, 15 U.S.C.A. § 77*l*,

are followed in state actions based on Ark.Stat.Ann. § 67–1256 (Repl.1966), the defrauded purchaser will be limited to rescission if he chooses to retain the stock. Deckert v. Independence Corp., (1940) 311 U.S. 282, 288, 61 S.Ct. 229, 85 L.Ed. 189. However, this procedural difference does not supply a reason for choosing the longer period of limitations in actions based on Rule 10b–5.

The plaintiffs also contend that the defendant Texas Capital Corporation can be held liable as an aider and abettor of the principal sellers under § 20 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78t, and that Texas Capital is beyond the reach of Ark.Stat.Ann. § 67–1256(b) (Repl.1966). It is, of course, unnecessary for the court to decide whether Texas Capital can be held liable either under the Arkansas statute or federal law. In any event, the determination of that question would bear little weight as to whether an action under Rule 10b–5 is sufficiently analogous to an action under the Arkansas Securities Act to apply the period of limitations of the latter.

■ Finally the court must select, as heretofore stated, the period of limitations that best effectuates the federal policy at issue. It is today unquestioned that a civil remedy based on Rule 10b–5 exists in favor of both buyers and sellers, and that the applicable statute of limitations is that of the forum. In selecting the proper statute of limitations, the obvious choice is the state statute of limitations directed toward securities fraud, if one exists. In addition, this court is bound by the decision in Myzel v. Fields, supra, that no allegation of scienter is required in an action under Rule 10b–5. That decision results in an irreconcilable difference between an action based on 10b–5 and an action based on common-law fraud and deceit.

Plaintiffs, contending otherwise, argue that Fausett & Co. v. Bullard, (1950) 217 Ark. 176, 229 S.W.2d 490, stands for the proposition that an honest misrepresentation of a material fact relief upon by a purchaser in Arkansas is

grounds for a common-law fraud action, regardless of whether the person making the representation did not know the truth and in the exercise of reasonable care could not have known of the truth. Dean Prosser,[8] on the other hand, lists Arkansas among those jurisdictions which purport to follow the rule of Derry v. Peek, (1889) 14 A.C. 337, 58 L.J.Ch. 864, which excludes from actual fraud any misrepresentation which is innocent, or merely negligent, citing Sledge & Norfleet Co. v. Mann, (1937) 193 Ark. 884, 103 S.W.2d 630. The court therein stated, at 193 Ark. 888–889, 103 S.W.2d at 632:

> "The law of the subject is well settled. In First National Bank of Newark v. People's National Bank of Springfield, 97 Ark. 15, 132 S.W. 1008, 1009, the late Chief Justice Hart quoted with approval from Hanger v. Evins, 38 Ark. 334, the following: 'A false representation, to be actionable, must not only mislead, but must be made fraudulently, and with that intent. No one can be held liable for a false representation, who honestly believed it when made, however false it may be; but he is liable if he knew it to be false, or, knowing nothing about it, asserted it to be true.' * * *
>
> "In Troyer v. Cameron, 160 Ark. 421, 254 S.W. 688, 690, the court quoted the following as the rule of the court governing actionable misrepresentations: 'In order that representations may be fraudulent in law, they must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect.' "

■ The intent required in a common-law action for actual fraud and deceit is a belief that the representation is false, or an absence of belief that the representation is true. In short, representations are considered to be fraudulent if made by one who either knows them to be false or else, not knowing, asserts them to be true. Croley v. Baker, (1963) 237 Ark. 136, 371 S.W.2d 830; Maurice v. Chaffin, (1951) 219 Ark. 273, 241 S.W.2d 257; City National Bank v. Sternberg, (1938) 195 Ark. 503, 114 S.W.2d 39; National Life & Accident Ins. Co., Inc., v. Hitt, (1937) 194 Ark. 691, 109 S.W.2d 426; Laney-Payne Farm Loan Co. v. Greenhaw, (1928) 177 Ark. 589, 9 S.W. 2d 19, 73 A.L.R. 1117. The court does not construe Fausett to be a departure from that principle. The necessary intent to deceive was therein found in representations made by one conscious that he had no sufficient basis of information to justify them. Prosser, supra, footnote 3. Arkansas has not yet opened the action of deceit to innocent misrepresentations, although a small number of cases apparently rely on "constructive" fraud, primarily as a matter of public policy. Lane v. Rachel, (1965) 239 Ark. 400, 389 S.W.2d 621; Arkansas Valley Compress & Warehouse Co. v. Morgan, (1950) 217 Ark. 161, 229 S.W. 2d 133; Kersh Lake Drainage District v. Johnson, (1941) 203 Ark. 315, 157 S. W.2d 39; Stewart v. Clark, (1938) 195 Ark. 943, 115 S.W.2d 887; Levinson v. Treadway, (1935) 190 Ark. 201, 78 S. W.2d 59. In Arkansas State Highway Comm. v. Clemmons, (1968) 224 Ark. 1124, 428 S.W.2d 280, the doctrine is recognized but not applied.

■ In addition, a common-law action for fraud and deceit embraces the concept of justifiable reliance, Prosser on Torts, § 103 (3d Ed. 1964), whereby the person defrauded bears the burden of showing by substantial evidence that he relied and acted upon the false representation to his damage. Republic Mining & Mfg. Co. v. Elrod, (1945) 208 Ark. 150, 185 S.W.2d 99. In contrast, the reliance required under Rule 10b–5 is, at best, minimal. In Myzel v. Fields, at page 735 of 386 F.2d, the court stated:

> "Professor Loss points out that in cases of nondisclosure, if reliance is a prerequisite of a Rule 10b–5 action, it

8. Prosser on Torts, § 102 (3d Ed.1964).

is 'little more than a formal requirement.' 3 Loss 1765. However the Court of Appeals for the Second Circuit in List v. Fashion Park, Inc., supra, 340 F.2d 457 at 463, 22 A.L.R. 3d 782, best states the rule that should govern this phase of a Rule 10b–5 suit:

" 'On the other hand, we do not agree with certain overtones in the opinion of the trial court concerning the meaning of "reliance" in a case of non-disclosure under Rule 10b–5. The *opinion* intimates that the plaintiff must prove he actively relied on the silence of the defendant, either because he consciously had in mind the negative of the fact concealed, or perhaps because he deliberately put his trust in the advice of the defendant. Such a requirement, however, would unduly dilute the obligation of insiders to inform outsiders of all material facts, regardless of the sophistication or naivete of the persons with whom they are dealing. * * *

" 'The proper test is whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact. Speed v. Transamerica Corp., D.C., 99 F. Supp. 808, 829; Kardon v. National Gypsum Co., 73 F.Supp. 798, 800 (E. D.Pa.1947). To put the matter conversley, insiders "are not required to search out details that presumably would not influence the person's judgment with whom they are dealing." Kohler v. Kohler Co., supra, 319 F.2d 634 at 642, 7 A.L.R.3d 486. This test preserves the common law parallel between "reliance" and "materiality," differing as it does from the definition of "materiality" under Rule 10b–5 solely by substituting the individual plaintiff for the reasonable man.' "

The burden of proof on plaintiff in a Rule 10b–5 action is slight, and there are no express defenses available to defendant. The period of limitations should be correspondingly short. The court is of the opinion that in view of the uncontroverted facts, the two-year statute of limitations in Ark.Stat.Ann. § 67–1256(e) should be applied and the plea of the statute of limitations sustained.

Therefore, summary judgment is being entered today dismissing the complaint of plaintiffs asserting a cause of action under the federal statutes against the defendants and adjudging costs against the plaintiffs.