Douglas M. BATCHELOR and Mary
M. Batchelor et al.,

v.

LEGG & CO.

Dr. Harry B. AUERBACH et al.,

v.

LEGG & CO.

Civ. Nos. 19709, 20512.

United States District Court,
D. Maryland.

June 7, 1971.

J. Cookman Boyd, Jr., Walter S. Levin and Sauerwein, Boyd & Decker, Baltimore, Md., for plaintiffs.

John Henry Lewin, Harry Teter, Jr., and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

MEMORANDUM OPINION

HARVEY, District Judge:

The defendant in these consolidated civil actions heretofore filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Following argument, this Court in an oral opinion rendered on February 17, 1971, denied the defendant's motion.[1] In this previous motion, defendant, as alternative relief, had asked for partial summary judgment as to certain plaintiffs and also for the entry of an order under Rule 56(d) specifying the facts that appear to be without substantial controversy. Although denying defendant's motion for full summary judgment, this Court reserved ruling on defendant's claim that partial relief be granted, and required the defendant, if it wished to press for such partial relief, to file more specific pleadings.

Acting pursuant to this Court's previous ruling, the defendant has now filed a supplemental motion for partial summary judgment, together with various exhibits and a stipulation. The supplemental motion has been opposed by the plaintiffs who have also filed some additional affidavits. The questions raised have been extensively briefed by the parties, and argument was heard in open court on June 4, 1971.

As indicated in this Court's oral opinion of February 17, 1971, the allegations of the complaint to be tested in the light of the depositions, affidavits and answers to interrogatories are essentially four in number, as follows:

Allegation No. 1. "That defendant intentionally misrepresented[2] that Hamilton Life Insurance Co. was being operated on a sound basis, by dynamic and reliable persons; and that high quality insurance was being written;"

Allegation No. 2. "That defendant misrepresented that a special situation existed in that there existed only a limited number of Hamilton shares for purchase;"

Allegation No. 3. "That defendant omitted to state that it was operating as a principal instead of as an agent in dealing in Hamilton stock, an alleged material omission;"

Allegation No. 4. "That defendant engaged in improperly making a market and establishing artificial prices, also an alleged material omission."

This Court previously held that there is no factual support in the record for Allegation No. 2. After reviewing the further briefs, affidavits and stipulations that have been filed, the Court is likewise satisfied that partial summary judgment should be granted as to Allegations Nos. 3 and 4. The defendant is therefore entitled to an order under Rule 56(d) specifying that the facts established by the pleadings, depositions and affidavits show that plaintiffs are not entitled to proceed to trial on Allegations Nos. 2, 3 and 4. However, the Court is further satisfied that the plaintiffs are entitled to proceed to trial on Allegation No. 1, except as to those plaintiffs and those transactions mentioned hereafter.

## I. The Four Allegations

As stated, the Court has previously ruled in favor of the defendant in connection with Allegation No. 2. As to Allegation No. 3, the Court in its previous ruling indicated that it was not satisfied that the pleadings, affidavits and depositions disclosed the capacity in which defendant was acting as to *all* the transactions of *all* the plaintiffs. By stipulation, it has now been established that as to each transaction between the

[1] That oral opinion has now been written up and filed, 52 FRD 545.

[2] In view of this Court's previous ruling, the words "intentionally misrepresented" in Allegation No. 1 should now be read as "intentionally or negligently misrepresented."

defendant and each plaintiff, the defendant sent and the plaintiff in question received a written notification and confirmation of the transaction in question. It is stipulated that these written confirmations were mailed on the day that the order was placed or shortly thereafter. It is further stipulated that certain purchasers received confirmation slips directly disclosing that defendant was acting as a dealer for its own account and that all other purchasers received confirmation slips directly disclosing that defendant was acting as agent for the account and risk of the purchaser, with two exceptions. In these two instances, the defendant acted as agent for both buyer and seller which was also clearly indicated on the confirmation slip.

As a result of this stipulation, it is clearly established in this case that defendant as to each transaction involving stock of Hamilton Life Insurance Company with each plaintiff fully complied with Rule 15cl–4 of the Securities & Exchange Commission. See CFR, Title 17, § 240.15cl–4. The record here shows that defendant furnished to each plaintiff in writing on the day the purchase order was executed, or shortly subsequent thereto, written notification indicating whether defendant acted as a dealer for its own account, or as an agent for the account and risk of the purchaser, or in two instances as agent for both the buyer and the seller. Therefore, there is no factual basis for the allegation that defendant omitted to state to the plaintiffs that it was operating as a principal instead of as an agent in dealing in Hamilton stock.

■■ Plaintiffs argue that the coded confirmation slips do not amount to a full disclosure of the necessary information, particularly to allegedly unsophisticated purchasers as the plaintiffs are claimed to be. After reviewing copies of the slips in question, this Court is satisfied that these documents adequately informed each of the plaintiffs of the capacity in which the defendant was acting in making the sales and that the defendant fully complied with SEC requirements. This Court is not prepared to say that failure of the defendant to go beyond Rule 15cl–4 amounted to a material omission which would form the basis for an action brought under § 10(b) and Rule 10b–5. This Court is further satisfied after reviewing Rule 15cl–4 that it is not of significance that a confirmation slip might have been received by a purchaser *after* the order was placed. It is apparent that the slips were received *before* the transaction became final, and if it was material to a particular purchaser to know the capacity in which the defendant was acting in the transaction, such fact was supplied in time for such purchaser to cancel the transaction before payment was due.

For an understanding of Allegation No. 4, it is necessary to recount the history of Chasins v. Smith, Barney & Co., which is now reported at 438 F.2d 1167 (2d Cir. 1971). At the time of the original hearing on defendant's motion for summary judgment, plaintiff in support of its position as to Allegation No. 4 relied on the opinion that had been rendered by a panel of the Second Circuit on July 7, 1970, as reported in CCH Federal Securities Reporter, Paragraph 92,712. In its previous oral opinion, this Court decided that it would not make a ruling concerning the applicability to the pending case of the *Chasins* decision, because at the time of the last hearing, a petition for rehearing was pending before the Second Circuit.

On March 2, 1971, the panel which decided the *Chasins* case withdrew its original opinion and filed a substituted opinion, which, as mentioned, is now reported at 438 F.2d 1167. At the same time, the petition for rehearing *en banc* was denied, with Circuit Judges Friendly, Lombard and Moore filing a dissenting opinion which is reported at 438 F. 2d 1174–1177. From a reading of the substituted opinion and of Judge

Friendly's dissent, it is quite apparent that the broad scope of the original *Chasins* opinion has been drastically limited and that the decision in effect has been confined to its particular facts. However, it is not necessary in this case to decide whether the novel *Chasins* doctrine should be applied as valid law in this Circuit. Assuming *arguendo* that *Chasins* would be followed in this Circuit, the undisputed facts in this case clearly indicate that plaintiffs' reliance here on that decision is misplaced. In *Chasins*, the customer had requested the defendant to make a written evaluation of his securities holdings, and the defendant had *strongly recommended* sales of some holdings and purchases of the three stocks in which defendant was dealing as a principal. The Court held that knowledge of the additional fact of marketmaking by the defendant in the three securities recommended could well have influenced the decision of the plaintiff and that failure of the defendant to disclose its status as a market-maker constituted a failure to disclose a material fact under Rule 10b–5.

The facts emphasized by the Second Circuit in its substituted opinion are clearly not present here. Legg was not giving investment advisory advice to these plaintiffs, as in *Chasins*. There are no affidavits or depositions indicating that Legg "strongly recommended" Hamilton stock. Furthermore, the facts in this case show that there were as many as seven and never fewer than four market-makers in Hamilton stock, including Legg, during the period that the plaintiffs made their purchases. The exhibits and affidavits filed herein show that defendant's quotations were fair and competitive and that on occasion defendant even permitted its purchasers to obtain Hamilton stock at savings. The facts further show beyond dispute that defendant was not "improperly making a market" nor "establishing artificial prices" in this stock. In support of their position that *Chasins*

should be applied here, plaintiffs point out that Legg, after the first *Chasins* opinion, added to its confirmation slips in transactions such as these, information to the effect that Legg was making a market in the stock involved. But this is no more than any prudent stock broker would do after having been advised by its counsel of the first *Chasins* opinion, which, of course, has now been withdrawn. A step such as this one, taken by defendant out of an abundance of caution, does not constitute any admission of a violation of securities law under the facts in this case.

Legg did reveal, in the transactions here where this was true, that it was acting as a dealer for its own account. Under SEC Rule 17a–9(f) (1), a "market maker" is defined as a "dealer" who holds himself out as being willing to buy and sell for his own account on a continuous basis otherwise than on a national securities exchange. Legg's disclosures to these plaintiffs were in compliance with SEC requirements and went beyond the disclosures made in the *Chasins* case by Smith, Barney, which had not there informed the plaintiffs that it was acting as a dealer for its own account. For these reasons then, Allegation No. 4 must fail.

█ As to Allegation No. 1, defendant's motion for partial summary judgment is denied, and this case should proceed to trial as to those plaintiffs who remain in the case and who base their cause of action on Allegation No. 1. In its previous ruling, this Court set forth its reasons for concluding that the defendant was not entitled to summary judgment on Allegation No. 1. After reviewing the conclusions reached and the reasons for them in the light of the further arguments and briefs that have now been presented to the Court, I now reaffirm my previous ruling. Nor is the Court of the opinion that this allegation should be limited to transactions after November 9, 1964 or after April, 1965. It was at a meeting held at

Legg's offices in June, 1963 that Legg's representatives indicated that Goldberg had a relationship with certain Legg partners almost on a day-to-day basis. If this were so, the question arises at this early date whether Goldberg was not *then* a reliable chief executive officer with a sound background and whether through the exercise of due diligence Legg's representatives could have *then* so ascertained. These and other similar questions cannot be definitively resolved as to 1963 transactions or as to those occurring thereafter, on the pending motion for partial summary judgment, whereunder reasonable inferences must be construed in favor of the plaintiffs. Furthermore, the additional affidavit that has been filed relating to the Lewis-Murphy conversation in late 1964 likewise does not definitively resolve the question whether, even if this was a casual remark, Murphy should or should not in the exercise of due diligence have reported it to other Legg representatives.

Defendant also argues that even assuming the alleged misrepresentations were made, they could not have influenced the purchases made after 1964 by some of the plaintiffs because there is no indication that the statements relied upon were repeated. However, many of the plaintiffs here did make intermediate purchases of Hamilton stock between 1963 and 1967, and in most cases, purchases were made in each of these consecutive years and on more than one occasion. If these facts are considered from a view most favorable to the plaintiffs, an inference may be drawn that the alleged misrepresentations had a continuing effect and influenced the later as well as the earlier transactions. Whether the proof would be sufficient to establish such an inference will have to await the trial. Gilbert v. Nixon, 429 F.2d 348 (10th Cir. 1970), relied upon by defendant, involves facts substantially different from those here.

For these reasons, this case should go forward on Allegation No. 1, and except as hereafter indicated, the parties should offer proof at trial as to this allegation.

## II. *Statute of Limitations*

Defendant further argues that the plaintiffs' claims are totally or partially barred by limitations. These cases involve transactions dating back to January of 1963. Suit was filed in Civil No. 19709 on July 16, 1968. Suit was filed in Civil No. 20512 on February 27, 1969. The questions that arise are (1) what is the proper limitations period to be applied?, and (2) what is the date that limitations would start to run in these actions? When it enacted § 10(b), Congress did not include a limitations period in the statute. Under such circumstances, it is clear that this Court must look to state law for the applicable statute of limitations. See Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L. Ed.2d 120 (1965). Although the period of limitations is determined by state law, the date of accrual is determined by federal law. Janigan v. Taylor, *supra*; Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8 (5th Cir. 1967).

After reviewing the authorities, this Court concludes that the controlling limitations period is that contained in § 34 of Article 32A of the Maryland Annotated Code, as it existed before this statute was amended in June of 1968, inasmuch as the transactions here involved occurred during the period from 1963 to 1968. The statutory provision in question is as follows (Subsection e):

"No person may sue under this section more than two years after the contract of sale."

However, applying the federal standard, this Court is satisfied that limitations would not commence to run on the date of the contract of sale but on the date that the illegal action is or should have been discovered. In support

of this conclusion, I would cite Vanderboom v. Sexton, 294 F.Supp. 1178 (W. D.Ark.1969); reversed, 422 F.2d 1233 (8th Cir. 1970). The District Court in that case applied an Arkansas statute, including the statutory accrual standard, to a Rule 10b–5 action, such statute being almost identical to the Maryland provision in specifying a two-year period of limitations to run from the time of the contract of sale. The Eighth Circuit reversed, not as to the two-year period applied but as to the method of determining the accrual date. The Court held that the Statute of Limitations should run from the date of the discovery of the fraud or from the date the fraud upon reasonable inquiry should have been discovered and remanded the case for trial in view of the questions of fact presented. The Court said this at pages 1240–1241:

"It is true that a 10b–5 claim is a legal action based upon an implied civil remedy in tort, Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951), and even though the distinction between law and equity must be preserved in federal courts under Art. III, § 2, clause 1 of the United States Constitution, there is no reason to differentiate as between the two kinds of actions in applying the federal policy as to the determining date on which a statute of limitations or laches begins to run. We feel that the remedial policy expressed by Congress in enacting the securities legislation would best be served by making any statute of limitations run only from the date of the discovery of the fraud or from the date the fraud upon reasonable inquiry should have been discovered."

"Summary judgment under the Federal Rules of Civil Procedure, Rule 56, is to be used only in cases where there is no genuine issue as to any material fact. Chambers v. United States, 357 F.2d 224 (8th Cir. 1966). Here we have a disputed unresolved issue of fact, namely, by what date was the alleged fraud discovered or should it have been discovered. It is not possible to determine whether the statute of limitations is a bar to this action until this issue is decided. Thus, we remand this question to the District Court for trial."

See also Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

Similarly, in the present case, it cannot be determined on this motion for partial summary judgment when the alleged violation of securities law was or should have been discovered by the plaintiffs upon reasonable inquiry. Genuine factual issues are presented that will have to be determined at trial.

Defendant argues that a different date of accrual should be applied in this case than in *Vanderboom*, because here a due diligence standard has been held to control while in *Vanderboom* the action was based on fraud. As this Court previously said in its memorandum opinion of February 17, 1971, "scienter is not essential to establishing a violation of Section 10(b) and Rule 10b–5 in this case, but * * * plaintiffs, in addition to proving other requisite elements, need show merely a lack of due diligence." But whether the test requires proof of specific intent to defraud or proof merely of negligence, the time for the statute of limitations to run should be the *same* under federal law. In both instances, an alleged violation of securities law is involved. In both instances, the remedial policy expressed by Congress in enacting securities legislation would best be served by making the statute of limitations in question run only from the date of discovery of the violation or from the date that such violation should have been discovered in the exercise of due diligence.

For these reasons, the defendant is not entitled to partial summary judgment as to all or any of the plaintiffs on the grounds that their claims are barred

by limitations. These issues will have to await trial.

### III. *Davidson's Claims*

■ In defendant's pending motion, special attention has been directed to the claims of the plaintiff Davidson. Davidson's deposition was taken, and he was specifically asked about representations made to him by Legg personnel. The Legg representatives in question were Battye, Felser and Stradtner. A careful reading of the deposition establishes that none of these individuals (and these were the only persons at Legg with whom Davidson had contact) made representations to Davidson as claimed in Allegation No. 1. Nor were any other representations made to Davidson by Legg personnel which would form the basis for an action under § 10(b) and Rule 10b–5. The undisputed facts here show that the defendant did not violate the law insofar as this plaintiff is concerned.

In opposing defendant's contention that summary judgment should be entered as to Davidson's claim, counsel for the plaintiffs rely on a brief affidavit of Davidson, recently filed on April 12, 1971. This affidavit in its entirety is as follows:

"Bernard Davidson, being duly sworn, deposes and says:

"I am a plaintiff in the above captioned matter, and have personal knowledge of the facts hereinafter set forth in this Affidavit, which is made in opposition to the defendant's Supplemental Motion for Partial Summary Judgment.

"The representations that Hamilton Life was being operated on a sound basis by dynamic and reliable persons, and writing high quality insurance were made to me, in general terms, by Battye and Felser during the period from January through May 1963, and from time-to-time thereafter, upon occasion. In addition, these representations were considered by me to be of a continuing nature, and, not specifically negated by any Legg agent at any time, operated as an inducement for my subsequent purchases. On some infrequent occasions thereafter, Battye cautioned about over-concentration in any stock, but neither Battye nor any other representative of Legg ever spoke derogatorily about the operation of Hamilton Life, until on or about September or October, 1967. My purchases of Hamilton Life stock were all induced by defendant Legg & Co., which I considered to be a specialist in insurance stocks, and extremely knowledgeable and reliable in that field."

When this statement is compared to Davidson's answers to interrogatories and to the full responses he gave under oath at the time of a very searching deposition of him that was taken on January 9, 1970, it is clear that *no* issue of fact remains as to his claim. He was repeatedly asked what Legg representatives said to him about Hamilton stock. He testified at length concerning these conversations, never mentioning that any representation was made to the effect that Hamilton Life was being operated on a sound basis by dynamic and reliable persons or to the effect that Hamilton was writing high quality insurance. Again and again, he testified that no other representations were made to him by Battye, Felser and Stradtner, *except* for those he had mentioned. In particular, I would refer to the following pages of his deposition (pp. 59–60, 62–64, 69–70, 129–130, 132, 134–136, 138–139, and 139–141).

Rule 56(e) requires a party opposing a motion for summary judgment to set forth *specific facts* showing that there is a genuine issue for trial. The Davidson affidavit of April 12, 1971 does not comply with that requirement. It does no more than repeat in conclusory terms allegations of the complaint. Faced with the clear and explicit facts developed by the defendant during the taking

of Davidson's deposition, including dates, persons involved and what was actually said, this plaintiff cannot go to trial by merely repeating under oath "in general terms"—and those are his own words—what his attorneys have set forth in the complaint. In view of what he said under oath on January 9, 1970, Davidson at least should have re-convened his deposition and furnished precise facts to support his position.

The question here is *not* as plaintiff contends, merely one of credibility. There is, of course, a very serious issue of credibility presented, one which no doubt Davidson would have to overcome if his claim were to go to trial. But clearly questions of credibility cannot be determined by the Court on a motion for summary judgment. Rather, the question in this case is whether the plaintiff Davidson has complied with Rule 56(e) and has come forward with *specific* facts (and I would emphasize the word "specific" in the Rule) to counter the clear showing by the defendant that as to him Legg & Company did not violate Rule 10b–5, as claimed in Allegation No. 1. This Court concludes that Davidson has not so complied on this record and that summary judgment should be entered for the defendant as to Davidson's claims.

### IV. *Other Claims*

Plaintiffs have indicated that they will not press their claim for recovery for alleged misrepresentations and omissions to plaintiff Chmar with respect to his purchases of 100 shares of Hamilton stock in April and May, 1967, and to plaintiff Glass with respect to his purchases of a total of 500 shares in July, 1967.[3] Plaintiffs likewise are not pressing their claim in connection with plaintiff Sauber's purchase of 10 shares on June 18, 1965. Defendant is therefore entitled to summary judgment as to these claims.

3. A similar concession was likewise made as to Davidson's purchases of a total of

### V. *Conclusion*

For all these reasons, defendant is entitled under Rule 56(d) to partial summary judgment and to an order specifying the extent to which various allegations of the complaint are not in controversy, all as indicated in the aforegoing opinion. Counsel should prepare and submit an appropriate order.

400 shares of stock in June and July, 1967.