**Robert SEIFFER et al., Plaintiffs-Appellees,**

v.

**TOPSY'S INTERNATIONAL, INC., et al., Defendants-Appellants.**

**Nos. 74–1711 to 74–1713.**

United States Court of Appeals, Tenth Circuit.

July 28, 1975.

Rehearings Denied Aug. 26, 1975.

Certorari Denied Jan. 12, 1976. See 96 S.Ct. 779.

796

Thomas W. Van Dyke, Kansas City, Mo. (Linde, Thomson, Fairchild, Langworthy & Kohn, Kansas City, Mo., and Robert C. Gordon, Rich, Granoff & Gordon, Kansas City, Mo., on the brief), for plaintiffs-appellees.

Harry P. Thomson, Jr., Kansas City, Mo. (Robert R. Raymond, Dennis D. Palmer, Shughart, Thomson & Kilroy, Kansas City, Mo., and Charles S. Schnider, Schnider, Shambert & May, Shawnee Mission, Kan., on the brief), for defendants-appellants Topsy's International, Inc., Jerry D. Berger, James T. House and Harry Nuell.

Francis J. Higgins, Chicago, Ill. (George M. Winger, Kansas City, Mo., Robert P. Anderson and Keith Martin, Olathe, Kan., Smith, Schwegler, Swartzman & Winger Inc., Kansas City, Mo., Payne & Jones, Chartered, Olathe, Kan., of counsel; Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., of counsel on the brief), for defendant-appellant Touche Ross & Co.

Before MURRAH, BARRETT and DOYLE, Circuit Judges.

MURRAH, Circuit Judge.

Topsy's International, Inc., and its accountants Touche Ross & Co. bring this § 1291 appeal from a judgment certifying a class action in a federal[1] securities fraud suit against them and two other defendants not parties to this appeal.[2] The trial court held and all the parties apparently acknowledge that the Kansas two-year statute of limitations is applicable as a defense to the action, unless it can be shown under the federal tolling doctrine[3] that the action was brought within two years of the time when plaintiffs by due diligence would discover or should have discovered the alleged fraud. In holding that the plaintiffs and the defined class meet all the requirements of Fed.R.Civ.P. 23(b)(3), the trial judge concluded that neither the federal securities laws nor the federal tolling doctrine require each class member to prove individual due diligence in discovering the fraud; that, instead, the applicable test is the "objective standard" of whether and when a "reasonable investor" would have discovered the fraud; and that common questions of law and fact thus predominate. Appellants contend that such an objective standard is not the law; that due diligence must be proved individually, making a class action unmanageable; and that we should therefore reverse the order certifying the class. We have previously held that the same order was not appealable under § 1292(b). (Order of September 19, 1974; petition for rehearing en banc denied by Order of October 18, 1974.) We now hold that the order is not appealable under § 1291. This means that, as the record presently

---

1. Only federal claims under 15 U.S.C. §§ 77q(a), 78j(b) and 17 C.F.R. § 240.10b–5 were certified to be maintainable in the class action. The complaint also contained allegations under Kansas state securities laws, which are to proceed individually and are not components of the case being reviewed here.

2. Topsy's underwriters and lawyers are also named as defendants, but they do not join this appeal of the certification of the class.

3. "[W]here the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered . . . ." *Bailey v. Glover*, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874), quoted in *deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1226 (10th Cir. 1970).

stands, the case will be tried as structured by the order certifying the class and that the error in that order, if any, must await review until final decision on the merits.

According to the plaintiffs' allegations, the defendants maintained an artificially inflated price for Topsy's securities by means of misleading annual reports, letters to shareholders, newspaper releases, and purportedly independent research reports, regarding Topsy's financial status and prospects, particularly as to its acquisition of Saxons Sandwich Shoppes, Inc. These reports of Saxons actual and potential profitability were allegedly disseminated, even though Saxons was declining and was ultimately closed by Topsy's at a great loss. The trial court's order gave the named plaintiffs the right to represent a class defined as all the damaged purchasers of Topsy's common stock from September 28, 1968, when each shareholder received the same letter from Topsy's favorably announcing its acquisition of Saxons, and all damaged purchasers of Topsy's debentures from February 4, 1969, until March 10, 1970, when the losses from the Saxons operation were revealed in a letter to all shareholders.

█ . Generally, appealability under § 1291 is limited to final judgments reached after trial on the merits. An order allowing or disallowing a class action may be assigned as error at that time. *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968). We have expressed reluctance to grant immediate review of orders granting or denying class status, in view of the fact that such an order is subject to amendment as the trial proceeds. Fed.R.Civ.P. 23(c)(1) and the Notes thereto. In *Gerstle v. Continental Airlines, Inc.,* 466 F.2d 1374, 1377 (10th Cir. 1972), we held that an order disallowing the class status previously granted was nonappealable under § 1291, since the trial court had expressed its openness to further consideration and modification of the order. See also *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 792 n. 2 (10th Cir. 1970). Cf., *Wilcox v.*

*Commerce Bank of Kansas City,* 474 F.2d 336 (10th Cir. 1973) (granting § 1292 appealability of an order denying class status).

These cases preceded *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1973). In that case, the Supreme Court, giving § 1291 "a practical rather than a technical construction," granted appeal from "collateral orders" in a class action before final judgment on the merits. See also *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In doing so, the Court observed that the determination of finality for purposes of § 1291 may pose a close question and should be guided by balancing "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." It affirmed the Court of Appeals' jurisdiction to review the district court's order allowing a class action with the condition that the defendants bear 90% of the cost of notice to the class. Expressly declining to decide jurisdiction over the issues of manageability and fluid-class recovery, the Court held that the order was appealable because the allocation of notice costs was a "final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." See generally, Manual for Complex Litigation, pp. 17–51 (1973). In our case, no claim is made as to the propriety of the allocation of notice costs to the plaintiffs. Rather, the ultimate issue sought to be appealed is whether the class action authorized by the order is appropriately manageable.

Following Eisen III, the Courts of Appeals have undertaken to articulate the guidelines governing the § 1291 appealability of a class action order. In denying the appealability of an order granting class standing, in *General Motors Corp. v. City of New York,* 501 F.2d 639, 644 (2d Cir. 1974), Chief Judge Kaufman reviewed and reaffirmed the Second Circuit's pre-Eisen three-prong test for § 1291 appealability: (1) whether the

class action determination is fundamental to the further conduct of the case; (2) whether review of that order is separable from the merits; and (3) whether that order will cause irreparable harm to the defendant in terms of time and money spent in defending a huge class action. The General Motors case distinguished *Herbst v. International Telephone and Telegraph Corp.,* 495 F.2d 1308 (2d Cir. 1974), where § 1291 appeal from an order certifying a class action was allowed because the practical viability of the action as well as the defense costs were vastly altered by the order. In that case, the order granting class standing converted the plaintiff from a single individual holding 100 shares to a class of 16,000 shareholders. Cf., *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) (granting § 1291 appealability of an order denying class status on "death knell" principle).

In *Rodgers v. United States Steel Corp.,* 508 F.2d 152, 159 (3rd Cir. 1975) (opinion by Judge Gibbons), the court disallowed § 1291 appeal from an order postponing class action determination and restricting communications with potential class members by plaintiffs or their attorneys. In this case, the Third Circuit formulated a similar three-prong appealability test: (1) the order must be a final rather than a provisional disposition of an issue; (2) it must not merely be a step toward final disposition of the merits; and (3) the rights asserted would be irreparably lost if review is postponed until final judgment. See also *In re Cessna Aircraft Distributorship Antitrust Litigation, White Industries, Inc. v. Cessna Aircraft Co.,* 518 F.2d 213 (8th Cir. 1975) (denying § 1291 appealability of an order granting class status); *Williams v. Mumford,* 511 F.2d 363 (D.C.Cir. 1975) (denying § 1291 appealability of an order denying class status).

▆ In our case, the "fundamental conduct" or viability of the suit does not turn on the class certification. The inclusion of the estimated 4,700 potential class members will indeed enlarge the stakes in the litigation, but it is not a sine qua non for the further conduct of the suit by the plaintiffs. There is probative evidence on the record that the nine named plaintiffs have substantial personal assets and a total potential recovery of $200,000, and they have manifest an intent to pursue the suit even if denied class status. The order thus does no "irreparable harm" to the defendants. They will be faced with a large and persistent lawsuit whether the class action is allowed or not. Cf. *Herbst v. International Telephone and Telegraph, supra,* and *Eisen III, supra.*

Furthermore, the determination of class here is not collateral to the final adjudication of the issues; rather it is an essential "ingredient of the cause of action" and "require[s] consideration with it." The objective standard for proving plaintiff's due diligence was necessarily established by the order; and proof of due diligence is an integral part of the cause of action whether brought individually or as a class because it involves both the right to bring the suit under the statute of limitations and the ultimate right to recover under the securities laws. See note 1, *supra; Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741. (1972)

Both quantitative and qualitative analysis convince us that it would be improper to review this order until the case has proceeded to a final disposition on the merits. Of course, the order remains subject to reappraisal and modification by the trial court during the course of its proceedings, and nothing herein expressed is intended to hinder or limit that process. We hold that at this juncture review of the order certifying the class is jurisdictionally inappropriate.

The appeal is dismissed.