James Francis O'HARA, III, et al.

v.

Irvin KOVENS et al.

Civ. No. Y–78–2329.

United States District Court,
D. Maryland.

July 12, 1979.

---

William A. Snyder, Jr., John T. Ward, and James B. Wieland, Baltimore, Md., for plaintiffs.

William F. Gately, Baltimore, Md., for Irvin Kovens.

Arnold M. Weiner, M. Albert Figinski, and Ira C. Cooke, Baltimore, Md., for Marvin Mandel.

William G. Hundley, Washington, D. C., for W. Dale Hess.

Thomas C. Green, Washington, D. C., for Harry W. Rodgers, III.

H. Russell Smouse, Baltimore, Md., for Irving T. Schwartz.

Gary M. Anderson, Laurel, Md., for Ernest N. Cory, Jr.

Michael E. Marr, Baltimore, Md., for William A. Rodgers.

Charles W. Bills, Gaithersburg, Md., for Eugene B. Casey.

JOSEPH H. YOUNG, District Judge.

The plaintiffs, James, Michael, and Josephine M. O'Hara, seek compensatory and punitive damages against the defendants as the result of the sale of their stock in the Marlboro Race Track to the defendants on December 31, 1971. The complaint alleges three counts of fraud based upon state and federal law. Count I states a federal cause of action alleging that defendants' conduct violated Rule 10b–5,[1] 17 C.F.R. § 240.10b–5 (1978), promulgated by the Securities and Exchange Commission pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78j (1976). Count II asserts a violation of the Maryland Securities Act, Md.Corp. & Ass'ns.Code Ann. § 11–101 *et seq.* Count

---

1. Rule 10b–5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

III alleges that defendants' acts constituted common law fraud. Since Counts II and III are state causes of action, federal jurisdiction is asserted under the doctrine of pendent jurisdiction.

This lawsuit is based on facts developed when a federal grand jury handed down indictments on November 24, 1975 against former Maryland Governor Marvin Mandel and certain associates who were alleged to have engaged in certain illegal activities in connection with the stock of the Marlboro Race Track, now known as the Bowie Race Track. Plaintiffs claim that the defendants conspired to acquire the controlling interest in the Marlboro Race Track without disclosing their intentions to plaintiff shareholders, the Maryland legislature, the Maryland Racing Commission, and the general public.

The conspirators allegedly acted between January 7, 1969 and May 28, 1971 to depress the value of plaintiff's stock. This purported manipulation was supposedly accomplished by Governor Mandel's veto of House Bill 1128 which would have effectuated a permanent transfer of eighteen racing days from Hagerstown Race Track to Marlboro Race Track. After the veto, with the stock commanding a lower price, it is alleged the defendants began acquiring a controlling interest through several different routes.

Stock purchases continued throughout 1971, and one of the defendants, Eugene B. Casey, wrote to each member of the Maryland General Assembly on or about January 7, 1972 purportedly to induce the legislators to override the Mandel veto of House Bill 1128. Such an override would increase the value of Marlboro Race Track stock by virtue of alloting it the additional eighteen racing days. The legislature did in fact override the Governor's veto on January 12, 1972, and the plaintiffs maintain that Governor Mandel himself acted directly and through his agents with the intent to have his own veto overridden. The stock value was further boosted by passage of the 1972 race track consolidation bill which was supported by Governor Mandel and the other defendants.

Having become aware of the allegedly fraudulent practices engaged in by defendants, plaintiffs filed this suit on November 22, 1978, almost exactly three years after the first indictments were brought. They seek compensatory and punitive damages totaling $15,000 plus interest, costs, and fees as well as the appointment of a receiver for the Bowie Race Track stock and such additional relief as may be necessary.

At this juncture, defendants Kovens and William Rodgers have moved for judgment on the pleadings pursuant to Fed.R.Civ. Proc. Rule 12(c). Defendants Mandel, Hess, Harry Rodgers, Cory, and Schwartz have moved to dismiss for failure to state a cause of action upon which relief can be granted. Fed.R.Civ.Proc. Rule 12(b)(6). Defendant Casey has filed an Answer in which he prays for dismissal of the complaint. After reviewing the case and the legal memoranda filed therein, the Court will grant defendants' motions pursuant to Rule 12.

Defendants' motion to dismiss raises one straightforward legal issue, namely, whether the appropriate statute of limitations period for this 10b–5 action is the one-year period established by the Maryland Securities Act, Md.Corp. & Ass'ns.Code Ann. § 11–703(f)(2), or the three-year period applicable under the Maryland statute of limitations for fraud actions, Md.Cts. & Jud. Proc.Code Ann. § 5–101.[2] Since there is no period of limitations prescribed in the statute for actions brought under section 10(b), courts have adopted the most "analogous" State statute of limitations. Once courts began implying civil remedies under rule 10b–5, *Kardon v. National Gypsum Co.*, 69 F.Supp. 512 (E.D.Pa.1946), it might have been expected that they would have bor-

2. Section 11–703(f)(2) provides that "[a] person may not sue under this section . . . one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence."

Section 5–101 provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

rowed the limitations periods which accompany those sections of the Securities Act of 1933 or the Securities Exchange Act of 1934 which set forth their own express liability clauses and limitations periods.[3]

Instead, courts followed the well-settled principle of *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), that "the timeliness of an action under the federal securities laws is to be determined by reference to the appropriate State statute of limitations." *Fox v. Kane-Miller Corp.,* 542 F.2d 915, 917 (4th Cir. 1976). In *Holmberg,* Justice Frankfurter had explained that "[t]he implied absorption of State statutes of limitations within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles." 327 U.S. at 395, 66 S.Ct. at 584.

The first cases to apply the *Holmberg* reasoning held that the controlling limitations provision was the State statute of limitations for fraud actions;[4] however, more recent cases have shown a trend toward adopting the statute of limitations in a State's Blue Sky Laws.[5] Two commentators have explained the effects of choosing one theory over the other:

> If the "fraud" statute of limitations is adopted, then it typically will not begin

to run until "discovery" of the fraud. However, if the Blue Sky statute of limitations is applied and contains no such tolling provision the cases have uniformly held that the general Federal equitable doctrine relating to concealment of a "fraud" will apply (even though they have just stated that a Rule 10b–5 violation is not necessarily "fraud" as the reason for applying the Blue Sky statute.)

R. Jennings & H. Marsh, Securities Regulation 859 (4th ed. 1977).

*Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970), was the first court to apply the Blue Sky limitations period rather than the common law fraud period. Its reasoning was based on the fact that rule 10b–5 and the Arkansas Blue Sky law were both specifically aimed at securities fraud and shared a "commonality of purpose" making the application of a "resemblance test" a more reasonable ground for choosing the securities-related statute of limitations.[6]

The *Vanderboom* court distinguished the Sixth Circuit's ruling in *Charney v. Thomas,* 372 F.2d 97 (6th Cir. 1967), which had held that neither the Michigan Blue Sky law nor the common law fraud statute were closely analogous to Rule 10b–5. Nevertheless the *Charney* court continued to apply the common law fraud limitation.

---

**3.** In the 1933 Act, liability sections having their own limitations periods include sections 11, 12 and 15 which are governed by section 13. 15 U.S.C. §§ 77k, 77*l*, 77m and 77*o*. Sections 9(e), 18, and 29(b) of the 1934 Act, 15 U.S.C. §§ 78i(e), 78r, and 78cc, contain their own limitations periods.

**4.** *See, e. g., Errion v. Connell,* 236 F.2d 447 (9th Cir. 1956); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783 (2d Cir. 1951); *Chiodo v. General Waterworks Corp.,* 380 F.2d 860 (10th Cir.), *cert. denied,* 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967); *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5 (5th Cir. 1967); *Klein v. Auchincloss, Parker & Redpath,* 436 F.2d 339 (2d Cir. 1971); *Sackett v. Beaman,* 399 F.2d 884 (9th Cir. 1968).

**5.** *See, e. g., Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir.), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1974); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972); *Vanderboom v. Sex-*

ton, 422 F.2d 1233 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Nickels v. Koehler Management Corp.,* 392 F.Supp. 804 (N.D.Ohio 1975), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977); *Kramer v. Loewi & Co., Inc.,* 357 F.Supp. 83 (E.D.Wis.1973), *overruled on other grounds,* 454 F.Supp. 899, 911 n.4 (E.D.Wis.1978); *Corey v. Bache & Co., Inc.,* 355 F.Supp. 1123 (S.D.W. Va.1973).

**6.** *See, e. g., Forrestal Village, Inc. v. Graham,* 179 U.S.App.D.C. 225, 551 F.2d 411 (1977); *Fox v. Kane-Miller Corp.,* 542 F.2d 915 (4th Cir. 1976); *Newman v. Prior,* 518 F.2d 97, 100 (4th Cir. 1975) (federal policy best served by applying state blue sky law's two-year statute of limitations to suit involving fraudulent sale of securities); *Sasso v. Koehler,* 445 F.Supp. 762 (D.Md.1978); *Maine v. Leonard,* 365 F.Supp. 1277 (W.D.Va.1973).

*Vanderboom* distinguished *Charney* in light of the fact that the Sixth Circuit required scienter for a 10b–5 action whereas the Eighth Circuit permitted 10b–5 recoveries where there had been negligent as well as intentional misrepresentation. Since scienter was absent from the Michigan Blue Sky law, application of the common law fraud limitations was the best means of effectuating federal policy. *See* Note, *A Cry for Help: The Ninth Circuit and the Statute of Limitations in Rule 10b–5 Actions,* 22 UCLA L.Rev. 947, 954–55 (1975).

Although the Supreme Court has recently held that scienter is required for implied causes of action pursuant to Rule 10b–5, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, *reh. denied,* 425 U.S. 986, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), this new requirement would not undermine the validity of *Vanderboom*'s resemblance test. Although scienter is now required as an element of a 10b–5 offense, it is only partially relevant to picking the appropriate limitations period. The presence or absence of negligence as a permissible element in an offense seems unrelated to the limitations question in a situation where there is a State statute clearly resembling the federal policy and containing a limitation's period which, on the basis of this resemblance, is thereby more compelling.

Plaintiffs read *Ernst* as mandating application of the state common law fraud limitation:

The plaintiffs believe that the *Ernst* case is crucial because it converted § 10(b) from a negligence-and-fraud statute into a fraud statute only. As plaintiffs will seek to demonstrate, § 11–703 of the state securities act is a negligence-and-fraud statute—not a fraud statute only. Thus, the state analog to Rule 10b–5, after *Ernst,* is common law fraud, not § 11–703.

Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss and Motions for Judgment on the Pleadings at 9.

In light of what has been said thus far, plaintiffs' argument is unconvincing. Plaintiffs extrapolate too much from *Ernst* which mentioned the statute of limitations issue only in passing. 425 U.S. at 210, n.29, 96 S.Ct. 1375. *Holmberg* is still good law, and the goal which it prescribes is fashioning a limitations based on State law which shall blend with "the interstices of the federal enactments" on which the cause of action is based. Even if one conceded plaintiffs' argument that section 11–703(f) was a negligence-and-fraud statute, this Court would have to be literally blind to overlook the substantial similarities between those provisions and Rule 10b–5. Accordingly, *Ernst* does not preclude this Court from continued reliance on the limitations period of section 11–703(f) as the appropriate limitations period in this 10b–5 action.[7]

Having concluded this, it is necessary to determine whether, and to what extent, the federal equitable tolling doctrine should be

---

**7.** This result obviously imposes a shorter limitations period, absent any equitable tolling, than would apply in the case of common law fraud. But as one authority has noted, "[s]hort statutes of limitations with an outside cut-off date are particularly appropriate in the case of securities or other fungibles of fluctuating value." Martin, *Statutes of Limitation in 10b–5 Actions: Which State Statute is Applicable?* 29 Bus.Law. 443 (1974). Although writing prior to the Supreme Court's *Ernst* decision, Martin notes that the presence or absence of scienter is essentially irrelevant to the nature of the limitations question:

Despite differing approaches among the courts to such questions as *scienter* and reliance, it is universally true that in order to

establish the civil liability which has been implied under section 10(b) and rule 10b–5, it is not necessary to allege and prove the classic elements of common law fraud. All such statutes are therefore extraordinary in their scope and do not require the lengthy periods of limitations applicable to common law fraud to effectuate their purposes.

*Id.* at 457. *See also Newman v. Prior,* 518 F.2d 97, 100 n.4 (4th Cir. 1975). Martin's conclusions have been reinforced by two post-*Ernst* cases. *See, e. g., Forrestal Village, Inc. v. Graham,* 179 U.S.App.D.C. 225, 228, 551 F.2d 411, 414 (1977) (similarities outweigh differences); *Dupuy v. Dupuy,* 551 F.2d 1005, 1024 n.31 (5th Cir.), *reh. denied,* 554 F.2d 1065 (5th Cir. 1977) (Blue Sky laws still closer to 10b–5).

applied in this case. As one court has explained,

> the statute of limitations in a § 10(b) action may be tolled by the "equitable doctrine" of fraudulent concealment. In order to invoke this doctrine, however, the plaintiff must have remained ignorant of the fraud "without any fault or want of diligence or care on his part." *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1871). It is well established that a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute. \* \* \* The plaintiff, rather, has the burden of showing that he "exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." \* \* \* The statutory period "[does] not wait appellant's leisurely discovery of the full details of the alleged scheme."

*Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974) (footnotes omitted). *See also Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1295–98 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364 (7th Cir.), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974).[8]

■ Although the period of limitations will be borrowed from state law whenever equitable tolling is applied, the question of when that limitations period begins is a matter of federal law. *Batchelor v. Legg &*

*Co.,* 52 F.R.D. 553, 558 (D.Md.1971). As *Holmberg* stated emphatically:

> This equitable doctrine is read into every federal statute of limitation. . . It would be too incongruous to confine a federal right within the bare terms of a State statute of limitation unrelieved by the settled federal equitable doctrine as to fraud, when even a federal statute in the same terms would be given the mitigating construction required by that doctrine.

327 U.S. at 397, 66 S.Ct. at 585. The accrual date, therefore, is governed by federal law, and limitations will begin to run "on the date that the illegal action is or should have been discovered." 52 F.R.D. at 558.[9]

In the present case, plaintiffs have acknowledged that they first learned of the alleged fraud on November 24, 1975, the date on which the defendants were indicted by the federal grand jury. In such circumstances, the cause of action may be deemed to have accrued no later than this date. Although the sale of stock occurred in 1971, application of the equitable tolling doctrine in this case of an alleged fraud means that the statute of limitations was tolled until November 24, 1975.

■ Were a three-year fraud limitations to apply, plaintiffs would have had until November 24, 1978 to file this lawsuit. The case was actually filed on November 22, 1978. Yet plaintiffs contend for the first

---

**8.** One commentator has traced the origins of the federal equitable tolling doctrine:

> Federal law has long held that where fraud is involved in an action, at law or in equity, the federal statute of limitations is tolled . . . *Holmberg v. Armbrecht* extended this doctrine to toll state statutes of limitations in equitable actions. *Moviecolor [Ltd. v. Eastman Kodak Co.,* 288 F.2d 80 (2d Cir.), *cert. denied,* 368 U.S. 821 [82 S.Ct. 39, 7 L.Ed.2d 26] (1961)] further extended the concept to apply to state statutes of limitations where the cause of action is federally created and cognizable only in federal courts whether the action was at law or in equity. Consequently, more courts are applying the federal tolling doctrine to 10b–5 actions. This, along with the adoption of the state statute of limitations has resulted in inconsistent periods of

limitations for 10b–5 actions among the circuits.

Bateman & Keith, *Statutes of Limitations Applicable to Private Actions Under SEC Rule 10b–5: Complexity in Need of Reform,* 39 Mo. L.Rev. 165, 177 (1974). *See also* A. Bromberg, Securities Law Fraud—SEC Rule 10b–5 § 8.4 (653) (1975). The introduction of the federal equitable tolling doctrine has been criticized in Note, 22 U.C.L.A. L.Rev., *supra* at 961–62.

**9.** *See also Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974); *Maine v. Leonard,* 365 F.Supp. 1277 (W.D.Va.1973); *Kramer v. Loewi,* 357 F.Supp. 83 (E.D.Wis.1973), *overruled on other grounds,* 454 F.Supp. 899, 911 n.4 (E.D. Wis.1978); *Seiffer v. Topsy's Intern., Inc.,* 64 F.R.D. 714 (D.Kan.1974), *appeal dismissed,* 520 F.2d 795 (10th Cir. 1975), *cert. denied,* 423 U.S. 1051, 96 S.Ct. 779, 46 L.Ed.2d 640 (1976).

time in their Memorandum opposing dismissal and judgment on the pleadings that regardless of whether state or federal law controls the limitations period, limitations could not begin to run until such time as Josephine O'Hara learned or should have learned of the fraud. Pointing out that Mrs. O'Hara was totally mentally incompetent [10] on November 24, 1975 and has remained so ever since, plaintiffs aver that the limitations period has not and never will run against her.

Plaintiffs' argument on this point, however, is totally at odds with settled federal case law. "It is a matter of federal law as to the circumstances that will toll a state statute applied to private actions under the securities law." *deHass v. Empire Petroleum Company*, 435 F.2d 1223, 1226 (10th Cir. 1970), *quoting Esplin v. Hirschi*, 402 F.2d 94, 103 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). As defendants have properly explained, federal law does not allow limitations periods to be tolled by mental incompetence. "Insanity does not prevent a federal statute of limitations from running." *Accardi v. United States*, 435 F.2d 1239, 1241 n.2 (3d Cir. 1970).[11] Plaintiffs have cited no federal authority to the contrary. Although they have attempted to base their tolling argument on state statutory analysis, Md.Cts. & Jud.Proc.Code Ann. §§ 5–201(a) and 5–203, these provisions are applicable to the general statute of limitations only and not to the limitations applicable in this 10b–5 action. To accept plaintiffs' argument would mean that both the period of limitations and its commencement date would be matters of state law in direct contravention of *deHass, supra*. Accordingly, the Court rejects plaintiffs' arguments that a three-year limitations is applicable and that such limitations have not run due to Josephine O'Hara's continuing mental incompetency. Count I shall therefore be dismissed.

Having dismissed plaintiffs' federal claims at this stage, the Court must also decline to hear their state claims since grounds for maintaining pendent jurisdiction are now lacking. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Shuman v. Sherman*, 356 F.Supp. 911 (D.Md.1973).

Defendants Kovens and William A. Rogers have adopted the arguments advanced by defendants Mandel, et al. in support of their motion for judgment on the pleadings. As a result, all counts shall also be dismissed as against these defendants as well as defendant Casey.

Accordingly, it is this 12th day of July, 1979, by the United States District Court for the District of Maryland, ORDERED: that plaintiffs' complaint be, and the same is, hereby DISMISSED.

---

10. Plaintiffs point out that on November 24, 1975, Josephine M. O'Hara was totally mentally incompetent and that her disability is irreversible and permanent. Her two sons, Michael and James, were appointed guardians of her property by an equity court in November, 1976.

11. *See also Casias v. United States*, 532 F.2d 1339 (10th Cir. 1976); *Williams v. United States*, 228 F.2d 129, 132 (4th Cir. 1955); *Jackson v. United States*, 234 F.Supp. 586, 587 (E.D. S.C.1964); *Kalil v. United States*, 107 F.Supp. 966 (E.D.N.Y.1952).